## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD. et al.,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LTD. and FTX TRADING LTD.,<br><br>          Plaintiffs,<br><br>vs.<br><br>PLATFORM LIFE SCIENCES, INC., LUMEN BIOSCIENCE, INC., GREENLIGHT BIOSCIENCES HOLDINGS, PBC, RIBOSCIENCE LLC, GENETIC NETWORKS LLC, 4J THERAPEUTICS INC., LATONA BIOSCIENCES GROUP, FTX FOUNDATION, SAMUEL BANKMAN-FRIED, ROSS RHEINGANS-YOO, and NICHOLAS BECKSTEAD,<br><br>         Defendants. | Adv. Proc. Case No. 23-50444 (JTD) |

**Hearing Date:  October 19, 2023 at 10:00 A.M. (ET)**
**Objections Due:  September 29, 2023 at 4:00 P.M. (ET)**
**Reply Deadline:  October 6, 2023 at 4:00 P.M. (ET)**

## MOTION OF PLATFORM LIFE SCIENCES, INC., A CANADIAN CORPORATION, TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Platform Life Sciences Inc.,[2] a Canadian corporation with its principal place of business in British Columbia, Canada ("PLS Canada"), hereby moves this Court, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the claims in this adversary proceeding asserted against PLS Canada by Plaintiffs Alameda Research Ltd., a British Virgin Islands company ("Alameda") and FTX Trading Ltd., a corporation registered in Antigua and Barbuda ("FTX Trading" and, together with Alameda, the "Plaintiffs"), on the basis that the Court lacks personal jurisdiction over PLS Canada. In support of this Motion, PLS Canada submits the concurrently filed Declaration of Dr. Edward J. Mills, the Chief Executive Officer of PLS Canada (the "Mills Declaration").

## I.

## PRELIMINARY STATEMENT

1.      Plaintiffs' claims against PLS Canada are claims between non-U.S. entities and involve transactions that occurred outside of the U.S. Specifically, Plaintiffs' claims seek to claw-back, under the avoidance provisions of the United States Bankruptcy Code and Delaware state law, certain funds invested in or otherwise provided to PLS Canada in early to mid-2022 to aid in the development and implementation of medical clinical trials in developing nations. The bulk of this funding was made pursuant to agreements between PLS Canada and Plaintiffs' non-debtor affiliate, Latona Biosciences Group, a limited liability company organized under the laws of the Bahamas ("Latona"), and a small portion of the funding was made pursuant to an agreement between PLS Canada and Plaintiffs' non-debtor affiliate, FTX Foundation. The source of the funding, as set forth in the Complaint, came from Plaintiffs, neither of which are U.S. entities. None of these transactions were entered into or performed in the U.S. PLS Canada was the party

---

[2] Platform Life Sciences, Inc., a Canadian corporation, is now known as Purpose Life Sciences, Inc., a Canadian corporation.

to the agreements and entered into them in Canada, PLS Canada was the party that received funds in its bank in Canada, and the source of the funding came from the non-U.S. Plaintiffs from non-U.S. bank accounts. None of the alleged fraudulent transfers to PLS Canada was based on any actions taken in the United States and there are no allegations in the Complaint to the contrary.

2.       The Complaint itself is silent on the issue of personal jurisdiction over PLS Canada. The Complaint describes "PLS" as an entity incorporated in two places – Canada and Delaware[3] – instead of two corporate entities (PLS Canada and a separately incorporated Delaware subsidiary) – presumably in a broad brush attempt to establish jurisdiction over PLS Canada based on the existence of its Delaware subsidiary (a separate corporate entity established and utilized for the sole purpose of issuing payroll for and providing benefits to PLS Canada's employees working remotely from the U.S. ("PLS Delaware")). The mere existence of a subsidiary incorporated in Delaware, however, is insufficient to confer personal jurisdiction on a foreign parent. PLS Delaware had no involvement in the transactions at issue in this adversary proceeding and, as set forth in the concurrently filed motion to dismiss the Plaintiffs' claims filed by PLS Delaware, the claims against PLS Delaware have no basis and PLS Delaware should be dismissed from this action as well.

3.       In sum, personal jurisdiction over PLS Canada is lacking for the following reasons:

- *First*, PLS Canada, the alleged transferee, is a Canadian life sciences company with its headquarters and principal place of business in British Columbia, Canada.

- *Second*, neither Plaintiff transferor in this action is a U.S. entity. Alameda is a company formed in the British Virgin Islands. FTX Trading is a corporation registered in Antigua and Barbuda. Latona, the counter-party to the investment and services agreements with PLS Canada, is a company organized in the Bahamas.

---

[3] Complaint, ¶ 21.

- **Third**, PLS Canada and PLS Delaware are separate corporate entities (with PLS Canada being incorporated in British Columbia, Canada in February 2021 and PLS Delaware being incorporated in Delaware in March 2022). PLS Delaware is PLS Canada's payroll processing subsidiary for its remote employees working in the United States, conducts no business operations, has no revenue and was not a party to the agreements or the challenged transactions.

- **Fourth**, PLS Canada – not PLS Delaware – was the party that entered into the agreements at issue. None of the acts alleged to give rise to the claims set forth in the Complaint relates to any conduct by PLS Canada in the United States.

4.       There are no grounds for the assertion of either general or specific jurisdiction against PLS Canada. The Plaintiffs have not and cannot meet their *prima facie* burden to establish personal jurisdiction over PLS Canada. Accordingly, the Complaint against PLS Canada must be dismissed for lack of personal jurisdiction.[4]

## II.

## RELEVANT FACTUAL BACKGROUND

5.       PLS Canada is a corporation organized in British Columbia, Canada, on February 1, 2021. A true and correct copy of PLS Canada's Certificate of Incorporation under the Business Corporations Act is attached to the Mills Declaration as Exhibit 1. PLS Canada's corporate headquarters and principal place of business are in Vancouver, British Columbia, Canada. *See* Mills Declaration, ¶ 4. PLS Canada conducts its business in Canada; it does not conduct business in the United States. *Id.*

6.       PLS Canada is a life sciences company that has developed and led some of the highest profile large-scale clinical trials both during and following the COVID-19 pandemic. *See* Mills Declaration, ¶ 5. In May 2023, PLS Canada was awarded the Clinical Trial of the Year for

---

[4] PLS Canada disputes that the funding it received is avoidable as a fraudulent transfer, as alleged by the Complaint and will, in the appropriate forum, address the underlying merits of the allegations. This Court, however, is not the appropriate forum. PLS Canada fully reserves any and all rights and defenses available to it in connection with this adversary proceeding.

its accelerated clinical trial work and cost-effective approaches to drug evaluations and efficacy. *Id.* PLS Canada's primary focus is the development of an international network of clinical trial sites in Canada, Brazil, Pakistan, Rwanda and South Africa, for the purpose of advancing life-saving interventions in marginalized and underserved communities in low and middle income countries, and increasing these countries' capacity for clinical trials to rapidly increase access for therapeutics, diagnostics and vaccines for existing diseases and future pandemics. *Id.* PLS Canada's development of a global platform infrastructure is designed to dramatically increase the speed of clinical trials, with the goal of transforming the future of research and development of remedies in low and middle income countries and saving millions of lives. *Id.*

7. PLS Delaware is a corporation incorporated in Delaware on March 31, 2022. A true and correct copy of PLS Delaware's Certificate of Incorporation is attached to the Mills Declaration as <u>Exhibit 2</u>. PLS Delaware is a wholly-owned subsidiary of PLS Canada. *See* Mills Declaration, ¶ 6.

8. PLS Delaware was incorporated for the sole and exclusive purpose of processing payroll, and providing benefits to, the employees of PLS Canada that work remotely from the U.S. *See* Mills Declaration, ¶ 7. PLS Delaware (utilizing the services of Trinet, a third-party payroll processing company) currently processes the payroll and benefits for approximately 11 full-time employees working remotely from the U.S. *Id.* PLS Delaware maintains a bank account, previously at Silicon Valley Bank and currently at JP Morgan Chase, which account is utilized solely to pay payroll and benefits to these remote employees. *Id.* The bank account maintained by PLS Delaware is funded exclusively by PLS Canada to provide payroll and benefits to its U.S. remote employees. *Id.*

9.  PLS Delaware has no business operations and generates no revenues. *See* Mills Declaration, ¶ 8. Because of the discrete role and limited services provided by PLS Delaware, it does not have or require office space, it shares executive management with PLS Canada, and it does not have a separate board of directors. *Id.*

10. In January 2022, PLS Canada was introduced to FTX leadership via a third party from Ireland who introduced Dr. Mills to Samuel Bankman-Fried in light of Mr. Bankman-Fried's apparent interest in supporting clinical trials in connection with the pandemic response. *See* Mills Declaration, ¶ 9. All communications by Dr. Mills or other PLS Canada representatives to FTX-related individuals or entities were made on behalf of PLS Canada. *Id.*

11. Following negotiations, on February 4, 2022, PLS Canada received the amount of $3.25 million, which was wired into its bank in Canada, the Canadian Imperial Bank of Commerce ("CIBC"). A true and correct copy (redacted) of the CIBC bank statement reflecting this incoming wire transfer is attached to the Mills Declaration as Exhibit 3. According to the Complaint, the source of these funds was Plaintiff FTX Trading, a non-U.S. entity (registered in Antigua and Barbuda, with a principal place of business in Nassau, Bahamas).[5] As reflected on the CIBC statement of the incoming wire (redacted), attached to the Mills Declaration as Exhibit 4, the funds from Plaintiff FTX Trading were from a non-U.S. bank account, located in Saint Johns, Antigua and Barbuda. PLS Delaware had no involvement in the negotiations, agreement or receipt of the $3.25 million. *See* Mills Declaration, ¶ 10.

12. Following a 3-day event and investment presentation hosted for PLS Canada in the Bahamas in March 2022, further negotiations ensued. *See* Mills Declaration, ¶ 11. All

---

[5] Complaint, ¶¶ 15, 64.

communications by Dr. Mills or other PLS Canada representatives to FTX-related individuals or entities regarding these negotiations were made on behalf of PLS Canada. *Id.*

13. On May 2, 2022, PLS Canada and Latona (a company organized under the laws of the Bahamas) entered into a Simple Agreement for Future Equity ("SAFE").[6]  A true and correct copy of the SAFE is attached to the Mills Declaration as Exhibit 5.  All communications by Dr. Mills or other PLS Canada representatives to FTX-related individuals or entities related to the SAFE were made on behalf of PLS Canada.  *See* Mills Declaration, ¶ 12.

14. On May 26, 2022, pursuant to the terms of the SAFE, PLS Canada received the amount of $35 million, which was wired into its bank in Canada, CIBC.  A true and correct copy (redacted) of the CIBC bank statement reflecting this incoming wire transfer is attached to the Mills Declaration as Exhibit 6.  According to the Complaint, the source of these funds was Plaintiff Alameda, a non-U.S. entity (registered in the British Virgin Islands).[7]  As reflected on the CIBC statement of the incoming wire (redacted), attached to the Mills Declaration as Exhibit 7, the funds from Plaintiff Alameda were from a non-U.S. bank account, located in Wickham Cay I, Road Town Tortola.  PLS Delaware had no involvement in the negotiations, agreement or receipt of the $35 million.  *See* Mills Declaration, ¶ 13.

15. On June 6, 2022, PLS Canada and Latona (a company organized under the laws of the Bahamas) entered into a Services Agreement.[8]  A true and correct copy of the Services Agreement is attached to the Mills Declaration as Exhibit 8.  All communications by Dr. Mills or other PLS Canada representatives to FTX-related individuals or entities related to the Services Agreement were made on behalf of PLS Canada.  *See* Mills Declaration, ¶ 14.

---

[6] Complaint, ¶¶ 16, 66.

[7] Complaint, ¶¶ 14, 69.

[8] Complaint, ¶¶ 16, 70.

16. On June 21, 2022, pursuant to the terms of the Services Agreement, PLS Canada received the amount of $15 million, which was wired into its bank in Canada, CIBC. A true and correct copy (redacted) of the CIBC bank statement reflecting this incoming wire transfer is attached to the Mills Declaration as <u>Exhibit 9</u>. According to the Complaint, the source of these funds was Plaintiff Alameda, a non-U.S. entity (registered in the British Virgin Islands).[9] As reflected on the CIBC statement of the incoming wire (redacted), attached to the Mills Declaration as <u>Exhibit 10</u>, the funds from Plaintiff Alameda were from a non-U.S. bank account, located in Wickham Cay I, Roan Town Tortola (British Virgin Islands). PLS Delaware had no involvement in the negotiations, agreement or receipt of the $15 million. *See* Mills Declaration, ¶ 15.

17. In sum, the entities on both sides of the alleged fraudulent transfers to PLS Canada that the Plaintiffs seek to avoid by the Complaint are non-U.S. entities. The Plaintiff transferors are entities organized under the laws of the British Virgin Islands (Alameda) and Antigua and Barbuda (FTX Trading). The defendant transferee, PLS Canada, is a British Columbia company. The parties to the SAFE and Services Agreement are non-U.S. entities: PLS Canada (Canadian) and Latona (Bahamian). All funding flowed between non-U.S. banks: PLS Canada (CIBC in Canada), FTX Trading (account in Antigua and Barbuda) and Alameda (account in Tortola, British Virgin Islands). No part of the transactions underlying the allegations in the Complaint against PLS Canada have a connection to the United States.

## III.

## ARGUMENT

18. The Plaintiffs' lawsuit against PLS Canada has been improperly commenced, as there is no basis to assert personal jurisdiction over PLS Canada with respect to a fraudulent

---

[9] Complaint, ¶¶ 14, 71.

transfer action arising between non-U.S. entities in connection with transactions that did not occur in the U.S. None of the Plaintiffs' allegations relate to PLS Canada's conduct in the U.S. or its contacts with the U.S. Accordingly, there is no basis for this Court to exercise specific personal jurisdiction over PLS Canada. Moreover, PLS Canada has, at all times since its incorporation in British Columbia, Canada, maintained its principal place of business and headquarters in Canada. It has never established a principal place of business in the U.S. The existence of a subsidiary incorporated in Delaware is insufficient to confer personal jurisdiction on its parent.[10] Consequently, there is no basis for this Court to find general personal jurisdiction over PLS Canada.

**A.  Plaintiffs Cannot Establish Personal Jurisdiction Over PLS Canada and the Motion to Dismiss for a Lack of Personal Jurisdiction Should Be Granted**

19.     In connection with a motion to dismiss a claim for lack of personal jurisdiction under to Rule 12(b)(2), the burden is on the Plaintiffs to present a *prima facie* case establishing jurisdiction over PLS Canada in this forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3rd Cir. 2002). The Plaintiffs have the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the Court. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3rd Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant."). Where a court lacks personal jurisdiction over a

---

[10] As set forth above and in the Mills Declaration, PLS Delaware was not involved in the challenged transactions, and is a separate corporate entity established and utilized for the sole purpose of issuing payroll for and providing benefits to PLS Canada's employees working remotely from the U.S. There are no allegations of wrongdoing by PLS Delaware in the Complaint, nor could there be as that entity does not conduct business operations, generates no revenue, and exists solely for the purpose of processing payroll and providing benefits to PLS Canada's remote employees.

defendant, it must dismiss the action.  *See Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 385 (D. Del. 2012).

20.     In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368.  Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [the plaintiff] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009).  To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings [].  Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id.* at 559.  To that end, the "plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 U.S. Dist. LEXIS 98956, *3-4 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3rd Cir. 1984)).

21.     Federal courts typically exercise personal jurisdiction according to the law of the state where the court sits.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3rd Cir. 2007).  Delaware's long-arm statute grants jurisdiction coextensive with that permitted by the due process clause of the Fourteenth Amendment of the United States Constitution.  *See* 10 Del. C. § 3104(c).[11]  In the context of a bankruptcy case, the bankruptcy court will look to a defendant's contacts with the United States as a whole, not just the contacts within the state in which it sits, to

---

[11] "Delaware's long-arm statute authorizes the exercise of jurisdiction over a non-resident who in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in the State; (3) causes tortious injury in the State by an act or omission in this State; or (4) causes tortious injury in the State or outside the State if the person regularly does or solicits business, engages in any persistent course of conduct in the State, or derives substantial revenue from services or things used or consumed in the State. 10 *Del. C.* § 3104(c)(1)-(4). Subsections (c)(1) through (c)(3) authorize the exercise of specific jurisdiction while subsection (c)(4) authorizes general jurisdiction. Only general jurisdiction allows a plaintiff's cause of action to be 'unrelated to the defendant's activities in the forum state.'" *Roe v. Wyndham Worldwide, Inc.*, 2023 U.S. Dist. LEXIS 146881, *8-9 (D. Del. Aug. 21, 2023).

DOCS_LA:351018.2 70948/001

determine if it has personal jurisdiction over a defendant. *Anheuser-Busch, Inc. v. Paques (In re Paques)*, 277 B.R. 615, 633 (Bankr. E.D. Pa. 2000).

22.     A court's inquiry into due process requirements is guided by the "minimum contacts" test established in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).   Under this standard, a plaintiff must show that a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations and citation omitted); *see also Marten v. Godwin*, 499 F.3d 290, 296 (3rd Cir. 2007).   The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum. *Marten*, 499 F.3d at 296.   A foreign corporation is entitled to due process-based personal jurisdiction protections to the same extent as a United States citizen. *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F. 4th 226, 233 (5th Cir. 2022) (citing U.S. Supreme Court precedent).

23.     A federal court must have one of two forms of personal jurisdiction to comport with these principles: either general jurisdiction or specific jurisdiction.   *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3rd Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984)).   In this case, there is neither general nor specific jurisdiction over PLS Canada and the action should be dismissed for a lack of personal jurisdiction.

   a. <u>This Court Lacks General Jurisdiction Over PLS Canada</u>

24.     Based on the Complaint's inexplicable description of "PLS" as a single entity incorporated in both Canada and Delaware, PLS Canada presumes that the Plaintiffs will assert that this Court should exercise general jurisdiction over PLS Canada based on the existence of its

wholly-owned subsidiary, PLS Delaware. General jurisdiction allows a court to exercise its jurisdiction over any party that possesses "continuous and systematic" contacts with the forum state, regardless of whether the claim arises out of the party's forum-related activities. *Helicopteros*, 466 U.S. at 415 n.9; *Marten*, 499 F.3d at 296; *O'Connor*, 496 F.3d at 317. Where the cause of action has no relation to a corporate defendant's contacts with the forum, general jurisdiction may only be asserted over a corporate defendant if the corporate defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (quoting *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 923 (2011)) (quotation marks omitted); *see also Helicopteros*, 466 U.S. at 414. "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business . . . ." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1552, 1558 (2017), citing *Daimler*, 571 U.S. at 137; *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3rd Cir. 2016).

25. PLS Canada is neither incorporated, nor does it have a principal place of business, in the United States. Rather, it is incorporated in, and exclusively does business from, Canada. There are no grounds on which PLS Canada could be viewed as "at home" in the United States as "the United States is hardly 'the center of [PLS Canada's] activities' or a 'surrogate for [PLS Canada's] place of incorporation or head office.'" *Douglass v. Nippon*, 46 F.4th at 243 (holding that a corporation incorporated and headquartered in Japan, while having contacts with the U.S. (including revenue generation and employees, but not high-level decision-making), did not have contacts "so substantial and of such a nature as to render the corporation at home" in the United States and, therefore, the foreign corporation was "not amenable to the general jurisdiction of American courts despite its contacts with the United States."). Similarly, PLS Canada is not "at

home" in the United States.  It is a Canadian corporation, with all of its business operations and revenue generation, in Canada.

26.     PLS Canada's sole tie to the United States is the existence of its wholly-owned subsidiary that provides, through a third-party service provider, payroll and benefits to PLS Canada's approximately 11 employees working remotely from the U.S.  Courts uniformly hold, however, that the ownership by a foreign corporation of a U.S. subsidiary does not, on its own, provide a basis for the assertion of jurisdiction over the foreign parent.  *See e.g.*, *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d at 390.  This is especially the case where the subsidiary's sole function is an administrative one.  *See e.g., Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945 (7th Cir. 2000) (recognizing that administrative services between a parent and its subsidiary may be provided in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction).

27.     PLS Canada presumes that the Plaintiffs will assert that personal jurisdiction over PLS Canada is appropriate based on a theory of alter-ego or agency.  *See e.g., Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3rd Cir. 2018) (holding "that, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary.").

28.     In Delaware, however, courts apply alter-ego and agency theories strictly, not only requiring a unity of interest and ownership and insufficient corporate separateness, but also requiring that the failure to disregard the separateness of the corporate entity would sanction a fraud or promote injustice.  *Mason v. Network of Wilmington*, 2005 Del. Ch. LEXIS 99, at *9-11

(Del. Ch. 2005) ("Persuading a Delaware Court to disregard the corporate entity is a difficult task. The legal entity of a corporation will not be disturbed until sufficient reason appears." … "Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal citations omitted). Here, there is no fraud or wrongdoing related to the existence of PLS Delaware – it is simply the administrative payroll processing arm – and was not involved in any of the transactions at issue in the Complaint.

29. Indeed, even under circumstances where there exist facts sufficient to establish a lack of separate corporate separateness or agency (*i.e.,* even assuming that PLS Delaware was the alter-ego or agent of PLS Canada), in order to establish personal jurisdiction over PLS Canada, the Plaintiffs must also establish a second prong: the existence of acts in the forum which can be fairly imputed to the foreign defendant. *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 506-07 (D. Del. 2003). Here, as in *Reach & Assocs.*, none of the conduct underlying the Plaintiffs' claims took place in Delaware (or anywhere in the United States). The existence of PLS Delaware as a corporate entity in Delaware has nothing to do with the underlying claims of the Plaintiffs. As the *Reach & Assocs.* court concluded, "there are no acts in Delaware which can be fairly imputed to the nonresident Defendants and, as a result, Plaintiffs' second ground for personal jurisdiction over Defendants [on alter-ego grounds]… must be rejected." *Id.* at 507. For the same reasons, the court in *Reach & Assocs.* rejected personal jurisdiction on an agency theory, holding that "an agency relationship alone, is not sufficient to confer jurisdiction. Although the Plaintiffs have … already demonstrated an absence of corporate formalities among the Defendants, Plaintiffs have failed to show that any of the actions alleged by the complaint are jurisdictional acts, that is,

14

none of the behaviors underlying the Plaintiffs' claims occurred in Delaware.  Therefore, the Court

concludes agency principles do not confer personal jurisdiction over Defendants…"  *Id.*

30.     The holding of the court denying personal jurisdiction over a Canadian corporation

in *IM2 Merchandising & Mfg., Inc. v. Tirex Corp.,* 2000 Del. Ch. LEXIS 156 (Del. Ch. Nov. 2,

2000), while dealing with a Canadian subsidiary and a Delaware parent, is instructive.  In *IM2*

*Merchandising*, the court held as follows:

> At this stage, the plaintiffs bear the burden to articulate a non-frivolous basis for this
> court's assertion of jurisdiction over Tirex Canada.  If the plaintiffs can articulate such
> an argument, the court will deny Tirex Canada's motion and permit the plaintiffs to
> take discovery to support a final determination that personal jurisdiction can be
> exercised over Tirex Canada.

> The plaintiffs primarily base their argument on a single jurisdictional fact:  Tirex
> Canada's parent corporation is a Delaware corporation. According to the plaintiffs,
> Tirex controlled Tirex Canada directly and thus Tirex Canada's separate corporate
> identity should not be respected.

> The problem with this theory, however, is quite fundamental. Tirex Canada is subject
> to personal jurisdiction, if at all, pursuant to 10 Del. C. § 3104. Section 3104 enables
> this court to exercise personal jurisdiction over a non-resident defendant who "through
> an agent" conducts specific forum-directed activities. The statute has been utilized to
> exert this state's judicial power over corporate defendants who were found to be "alter
> egos," "co-conspirators," or "principals" of other corporations over whom jurisdiction
> in Delaware was proper.

> However denominated, the core inquiry under any of these theories requires a showing
> of two "critical elements: 1) that the out-of-state defendant over whom jurisdiction is
> sought has no real separate identity from a defendant over whom jurisdiction is clear
> based on actual domicile or satisfaction of Delaware's long-arm statute; and 2) the
> existence of acts in Delaware which can be fairly imputed to the out-of-state defendant
> and which satisfy the long-arm statute and[] federal due process requirements."

> It is the second prong of this test that the plaintiffs clearly cannot satisfy here.  The
> plaintiffs admit that none of the conduct that is at issue in this case occurred in the State
> of Delaware.  Rather, the conduct of Tirex that the plaintiffs complain of took place in
> Quebec, Canada.

> Thus, there is no Delaware act of Tirex's that can be imputed to Tirex Canada, other
> than Tirex's Delaware identity itself.  Here, Tirex's incorporation as a Delaware citizen
> long predated IM2's involvement with the Tirex Companies.  That is, Tirex's act of
> incorporating itself in Delaware had nothing to do with the underlying claims of the

plaintiffs and is not alleged to have been in furtherance of a conspiracy to unlawfully injure IM2.

If the plaintiffs' stark theory was accepted, the courts of Delaware would have personal jurisdiction over the non-Delaware subsidiary of a Delaware parent corporation whenever such a subsidiary engages in joint conduct with its Delaware parent *outside of Delaware*. To accept this theory would be to rewrite § 3104 and to pass the limits of this state's authority under the federal constitution.

Because the plaintiffs have failed to show any statutory basis for exercising personal jurisdiction over Tirex Canada, the complaint must be dismissed as against it.

*IM2 Merchandising.,* 2000 Del. Ch. LEXIS 156, at *12-16 (internal footnotes and citations omitted; emphasis in original). *See also Global Recycling Solutions, LLC v. Greenstar N.J., LLC*, 2011 U.S. Dist. LEXIS 110477, *32-33 (D. Del. Sept. 28, 2011) (granting motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction on the grounds that, among other things, "[parent defendant company's] admitted incorporation of [subsidiary defendant company] is insufficient under Delaware law to provide a basis for finding specific jurisdiction since that act of incorporation is unrelated to this dispute.").

31. So too here. None of the acts underlying the Plaintiffs' claims occurred in Delaware, or anywhere in the United States, and the act of incorporation of a Delaware payroll entity is wholly unrelated to the allegations in the Complaint, thus providing no basis for personal jurisdiction over PLS Canada.

   b. <u>This Court Lacks Specific Jurisdiction Over PLS Canada</u>

32. For the same reasons, there are no grounds (and none are raised in the Complaint), that would allow this Court to assert specific jurisdiction over PLS Canada. Specific jurisdiction allows the court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in that forum. *Helicopteros*, 466 U.S. at 414 n.8; *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3rd

Cir. 2006). In determining whether there is specific jurisdiction over a nonresident defendant, courts undertake a three-part inquiry. *O'Connor*, 496 F.3d at 317 (3rd Cir. 2007). "First, the defendant must have 'purposefully directed his activities' at the forum." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those purposefully directed activities. *Helicopteros*, 466 U.S. at 414. Third, if the first two requirements are met, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal citations omitted); *see also O'Connor*, 496 F.3d at 317.

33. In this case, PLS Canada is a Canadian entity with its headquarters and principal place of business in Canada; it conducts no business operations in the United States. PLS Canada has a subsidiary in Delaware that was incorporated for the purpose of providing the administrative function of processing payroll and benefits for PLS Canada's employees working remotely from the United States (which entity conducts no business operations). PLS Canada has no business activities directed to either Delaware or the United States.

34. Moreover, the Plaintiffs' fraudulent transfer claims do not arise out of or relate to any business activities directed to Delaware or the United States (as there are none). To the contrary, the Plaintiffs' claims arise out of agreements entered into by PLS Canada in connection with its exclusively Canadian business activities. Latona, the primary counter-party, is a Bahamian company. The funding flowed between non-U.S. entities – PLS Canada (Canadian) as transferee defendant, on the one hand, and Alameda (British Virgin Islands) and FTX Trading (Antigua and Barbuda), as transferor plaintiffs on the other hand. The transfers were made between non-U.S. bank accounts – Canada (PLS Canada) and British Virgin Islands / Antigua and Barbuda (Alameda and FTX Trading). The Plaintiffs were not damaged in Delaware or the United States. There is

17

no requisite linkage between PLS Canada's business activities and the underlying actual and constructive fraudulent transfer claims against it in the Complaint.

35.     The assertion by the Plaintiffs of an actual fraudulent transfer claim does not alter the analysis. *See e.g., IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3rd Cir. 1998) (requiring, in connection with an allegation of an intentional tort, that the plaintiff meet a three-prong test. "First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity."). As the Third Circuit held in *IMO Indus.* in affirming an order dismissing an intentional tort case against a defendant foreign corporation for lack of personal jurisdiction: "Applying this test to the present facts, we conclude that personal jurisdiction does not exist here since [plaintiff] has not pointed to sufficient facts demonstrating that [defendant] 'expressly aimed' its tortious conduct at [the forum state]. To the contrary, the focus of the dispute – i.e. the proposed sale of an Italian company to a French company and a claim of rights by a German company pursuant to a license agreement apparently governed by German law – and the alleged contacts by [defendant] (i.e., its correspondence) all appear to be focused outside the forum. The order of the district court [dismissing the case for lack of personal jurisdiction] will therefore be affirmed."). *Id.* at 256.

36.     Here too, PLS Canada did not expressly aim any conduct at the United States. Rather, the focus of the dispute – whether couched as an intentional or constructive fraudulent transfer – are all focused outside of the United States, making dismissal of the case against PLS Canada for lack of personal jurisdiction warranted.

DOCS_LA:351018.2 70948/001

37.     Further, while not necessary to reach the third prong of the test as the requisite minimum contacts have not been established, the assertion of jurisdiction under these circumstances would certainly fail to "comport with fair play and substantial justice."  *Id.* at 259 ("[F]or jurisdiction to be exercised the court must determine, in its discretion, 'that to do so would comport with 'traditional notions of fair play and substantial justice[;]'" holding that the court need not reach this issue where the plaintiff has not met its primary burden of demonstrating defendant's minimum contacts with the forum).

38.     In sum, the undisputed evidence here demonstrates that there is no personal jurisdiction over defendant PLS Canada, a non-U.S. entity with respect to claims that all took place outside of the United States between non-U.S. entities.  There are no allegations in the Complaint that would support personal jurisdiction over PLS Canada, and Plaintiffs have failed to make the requisite *prima facie* showing that personal jurisdiction over PLS Canada is appropriate.

**B.     The Plaintiffs Have Not Made a *Prima Facie* Showing of Personal Jurisdiction Over PLS Canada and Thus Plaintiffs Should Not Be Entitled to Undertake Jurisdictional Discovery**

39.     As a general matter, jurisdictional discovery should be allowed unless the plaintiff's claim of personal jurisdiction is "clearly frivolous."  *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3rd Cir. 2010); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3rd Cir. 1997) (noting that a mere "unsupported allegation" that the prerequisites for personal jurisdiction have been met would amount to a "clearly frivolous" claim, and would not warrant the grant of jurisdictional discovery).  "[A] court should not permit discovery as a matter of course.  Before allowing jurisdictional discovery to proceed, '[t]he court must be satisfied that there is some indication that th[e] particular defendant is amenable to suit in this forum.'"  *3G Licensing, S.A. v. Lenovo Grp. Ltd.,* 2019 U.S. Dist. LEXIS 143453, *8-9 (D. Del. Aug. 22, 2019)

DOCS_LA:351018.2 70948/001

(citations omitted). The Third Circuit has described a *prima facie* showing as one that demonstrates "with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* at *6, 23, *citing Mellon Bank*, 960 F. 2d at 1223. If a plaintiff does not come forward with "*some* competent evidence" that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. *3G Licensing*, 2019 U.S. Dist. LEXIS 1434 at *9.

40. Thus, in the Third Circuit, where a plaintiff has failed to make a *prima facie* showing of personal jurisdiction, a grant of jurisdictional discovery is not appropriate. *Id.* at *23-24 ("[C]an a plaintiff be entitled to jurisdictional discovery if it has not made out a *prima facie* showing of personal jurisdiction? It appears that, pursuant to Third Circuit case law, the answer is 'no.' Indeed, the Third Circuit has repeatedly indicated that if a plaintiff fails to make out a *prima facie* showing, a grant of jurisdictional discovery would not be appropriate.") (citations omitted). *See also Fid. Nat'l Info. Servs. v. Plano Encryption Techs., LLC*, 2016 U.S. Dist. LEXIS 54653, *6-7, *22-23 (D. Del. Aug. 25, 2016) (denying jurisdictional discovery where plaintiff's claims of personal jurisdiction based on alter-ego were unsupported by "some competent evidence").

41. In this case, as discussed in detail herein and in the Mills Declaration, there is no competent evidence establishing personal jurisdiction over PLS Canada (a Canadian corporation), with respect to the claims in this adversary proceeding commenced by non-U.S. Plaintiffs (British Virgin Islands and Antigua and Barbuda corporations) with respect to matters occurring entirely outside of the U.S. No discovery will change these indisputable facts. Plaintiffs have not met their *prima facie* burden to come forward with "some competent evidence" that personal

jurisdiction over PLS Canada might exist. Therefore, the Court should not permit jurisdictional discovery to proceed, and should grant PLS Canada's motion to dismiss.

42. Pursuant to Local Rule 9013-1(f), PLS Canada consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Dated:    September 15, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James E. O'Neill (DE Bar No. 4042)
Alan J. Kornfeld (CA Bar No. 130063*) (admitted pro hac)*
Debra I. Grassgreen (CA Bar No. 169978) (*admitted pro hac*)
Tavi C. Flanagan (CA Bar No. 169156) (*admitted pro hac*)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:   joneill@pszjlaw.com
         akornfeld@pszjlaw.com
         dgrassgreen@pszjlaw.com
         tflanagan@pszjlaw.com

*Counsel to Defendant Platform Life Sciences, Inc., a Canadian corporation, now known as Purpose Life Sciences, Inc., a Canadian corporation*

21