# EXHIBIT 5

THIS INSTRUMENT AND ANY SECURITIES ISSUABLE PURSUANT HERETO HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES OF AMERICA SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES OR OTHER JURISDICTIONS ("**APPLICABLE SECURITIES LAWS**"). THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED IN THIS SAFE AND UNDER APPLICABLE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM.

UNLESS PERMITTED UNDER APPLICABLE SECURITIES LAWS, THE HOLDER OF THIS SECURITY MUST NOT TRADE THE SECURITY BEFORE THE DATE THAT IS 4 MONTHS AND A DAY AFTER THE LATER OF (I) THE DATE OF ISSUANCE OF THIS SECURITY OR (II) THE DATE THE ISSUER BECAME A REPORTING ISSUER IN ANY PROVINCE OR TERRITORY.

**PLATFORM LIFE SCIENCES INC.**

**SAFE**
**(Simple Agreement for Future Equity)**

THIS CERTIFIES THAT in exchange for the payment by Latona Bioscience Group (the "**Investor**") of **US$35,000,000** (the "**Purchase Amount**") on or about May 2, 2022, Platform Life Sciences Inc., a corporation organized under the laws of British Columbia, Canada (the "**Company**"), hereby issues to the Investor the right to certain of the Company's Capital Shares, subject to the terms described below.

1. *Events*

    (a) **Equity Financing.** If there is an Equity Financing before the termination of this Safe, on the initial closing of such Equity Financing, this Safe will automatically convert into the number of Safe Shares equal to the Purchase Amount divided by the Safe Price.

    In connection with the automatic conversion of this Safe into Equity Financing Shares or Safe Shares, the Investor will execute and deliver to the Company all of the transaction documents related to the Equity Financing; *provided*, that such documents (i) are the same documents to be entered into with the purchasers of Equity Financing Shares, with appropriate variations for the Safe Shares, if applicable; and (ii) have customary exceptions to any drag-along applicable to the Investor, including (without limitation) limited representations, warranties, liability and indemnification obligations for the Investor.

    (b) **Liquidity Event.** If there is a Liquidity Event before the termination of this Safe, the holder of this Safe will automatically be entitled (subject to the liquidation priority set forth in Section 1(d) below) to receive a portion of Proceeds, due and payable to the Investor immediately prior to, or concurrent with, the consummation of such Liquidity Event, equal to the greater of (i) the Purchase Amount (the "**Cash-Out Amount**") or (ii) the amount payable on the number of Common Shares equal to the Purchase Amount divided by the Liquidity Price (the "**Conversion Amount**"). If any of the Company's securityholders are given a choice as to the form and amount of Proceeds to be received in a Liquidity Event, the Investor will be given the same choice, *provided* that the Investor may not choose to receive a form of consideration that the Investor would be ineligible to receive as a result of the Investor's failure to satisfy any requirement or limitation generally applicable to the Company's securityholders, or under any applicable laws.

    Notwithstanding the foregoing, in connection with a Change of Control intended to qualify as a tax-free reorganization, the Company may reduce the cash portion of Proceeds payable to the Investor by the amount determined by its board of directors in good faith for such Change of Control to qualify as a tax-free reorganization, provided that such reduction (A) does not reduce the total Proceeds payable to such Investor and (B) is applied in the same manner and on a pro rata basis to all securityholders who have equal priority to the Investor under Section 1(d).

(c) **Dissolution Event**. If there is a Dissolution Event before the termination of this Safe, the Investor will automatically be entitled (subject to the liquidation priority set forth in Section 1(d) below) to receive a portion of Proceeds equal to the Cash-Out Amount, due and payable to the Investor immediately prior to the consummation of the Dissolution Event.

(d) **Liquidation Priority**. In a Liquidity Event or Dissolution Event, this Safe is intended to operate like standard non-participating Preferred Shares. The Investor's right to receive its Cash-Out Amount is:

(i) Junior to payment of outstanding indebtedness and creditor claims, including contractual claims for payment and convertible promissory notes (to the extent such convertible promissory notes are not actually or notionally converted into Capital Shares);

(ii) On par with payments for other Safes and/or Preferred Shares (to the extent any are issued and outstanding as of the closing or occurrence of the Liquidity Event or Dissolution Event), and if the applicable Proceeds are insufficient to permit full payments to the Investor and such other Safes and/or Preferred Shares, the applicable Proceeds will be distributed pro rata to the Investor and such other Safes and/or Preferred Shares in proportion to the full payments that would otherwise be due; and

(iii) Senior to payments for Common Shares.

The Investor's right to receive its Conversion Amount is (A) on par with payments for Common Shares and other Safes and/or Preferred Shares (to the extent any are issued and outstanding as of the closing or occurrence of the Liquidity Event or Dissolution Event) who are also receiving Conversion Amounts or Proceeds on a similar as-converted to Common Share basis, and (B) junior to payments described in clauses (i) and (ii) above (in the latter case, to the extent such payments are Cash-Out Amounts or similar liquidation preferences).

(e) **Termination.** This Safe will automatically terminate (without relieving the Company of any obligations arising from a prior breach of or non-compliance with this Safe) immediately following the earliest to occur of: (i) the issuance of Capital Shares to the Investor pursuant to the automatic conversion of this Safe under Section 1(a); or (ii) the payment, or setting aside for payment, of amounts due the Investor pursuant to Section 1(b) or Section 1(c).

2. *Definitions*

"**Capital Shares**" means the shares in the capital of the Company, including, without limitation, the "**Common Shares**" and the "**Preferred Shares**."

"**Change of Control**" means (i) a transfer (whether by merger, consolidation, exchange or otherwise), in one transaction or a series of related transactions, to a person or group of affiliated persons (other than an underwriter of the Company's securities), of the Company's securities or Capital Shares if, after such closing, such person or group of affiliated persons would hold at least a majority of the total voting power represented by the outstanding voting securities of the Company or such other surviving or resulting entity, (ii) any reorganisation, scheme of arrangement, merger, amalgamation or other consolidation of the Company, other than a transaction or series of related transactions in which the holders of the voting securities of the Company outstanding immediately prior to such transaction or series of related transactions retain, immediately after such transaction or series of related transactions, at least a majority of the total voting power represented by the outstanding voting securities of the Company or such other surviving or resulting entity or (iii) a sale, lease or other disposition of all or substantially all of the assets of the Group Companies.

"**Common Shares**" means the Company's common shares, having no par value.

2

"**Company Capitalization**" is calculated as of immediately prior to the initial closing of the Equity Financing and (without double-counting) includes all of the following components and/or securities: (i) all shares issued and outstanding in the Capital Shares of the Company; (ii) all Converting Securities; (iii) all issued and outstanding Options; (iv) all Promised Options; and (v) the Unissued Option Pool; provided, however, that the term Company Capitalization shall exclude any increases to the Unissued Option Pool (except to the extent necessary to cover Promised Options that exceed the Unissued Option Pool) in connection with the Equity Financing.

"**Converting Securities**" includes this Safe and other convertible securities issued by the Company, including but not limited to: (i) other Safes; (ii) convertible promissory notes and other convertible debt instruments; and (iii) convertible securities that have the right to convert into Capital Shares.

"**Direct Listing**" means (i) the Company's initial listing of its Common Shares (other than Common Shares not eligible for resale under Rule 144 under the Securities Act) on a national securities exchange in the United States by means of an effective registration statement on Form F-1 or Form S-1 filed by the Company with the United States Securities and Exchange Commission that registers the Company's existing Capital Shares for resale, as approved by the Company's board of directors, or (ii) any analogous listing not involving any underwritten offering of securities in any exchange located in a jurisdiction other than the United States. For the avoidance of doubt, a Direct Listing shall not be deemed to be an underwritten offering and shall not involve any underwriting services.

"**Dissolution Event**" means (i) a voluntary termination of operations, (ii) a general assignment for the benefit of the Company's creditors or (iii) any other liquidation, dissolution or winding up of the Company (excluding a Liquidity Event), whether voluntary or involuntary.

"**Dividend Amount**" means, with respect to any date on which the Company pays a dividend on its outstanding Common Shares, the amount of such dividend that is paid per Common Share multiplied by (x) the Purchase Amount divided by (y) the Liquidity Price (treating the dividend date as a Liquidity Event solely for purposes of calculating such Liquidity Price).

"**Equity Financing**" means a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Capital Shares at a fixed valuation.

"**Equity Financing Shares**" means the class, series and/or type of shares issued to the investors investing new money in the Company in connection with the initial closing of the Equity Financing.

"**Group Companies**" means the Company and the Company's subsidiaries from time to time.

"**Initial Public Offering**" means the closing of the Company's first firm commitment underwritten initial public offering of Common Shares in conjunction with the listing of such Common Shares on any securities exchange, which shall be deemed to have occurred upon the consummation of the listing transaction as prescribed under the listing rules of the applicable securities exchange.

"**Liquidity Capitalization**" is calculated as of immediately prior to the closing of the Liquidity Event and (without double-counting) includes all of the following components and/or securities: (i) all shares issued and outstanding in the Capital Shares of the Company; (ii) issued and outstanding Options and (to the extent receiving Proceeds) Promised Options; and (iii) all Converting Securities, other than any Safes and other convertible securities (including without limitation Preferred Shares) where the holders of such securities are receiving Cash-Out Amounts or similar liquidation preference payments in lieu of Conversion Amounts or similar "as-converted" payments; provided, however, that the term Liquidity Capitalization shall exclude the Unissued Option Pool.

"**Liquidity Event**" means a Change of Control, a Direct Listing or an Initial Public Offering.

"**Liquidity Price**" means the price per share equal to the fair market value of the Common Shares at the time of the Liquidity Event, as determined by reference to the purchase price payable in connection with such Liquidity Event, provided that such price shall not exceed the Safe Price.

"**Options**" includes options, restricted share awards or purchases, restricted share units, share appreciation rights, warrants or similar securities, whether vested or unvested.

"**Preferred Shares**" means the Company's preferred shares or preference shares or such other similarly named class of share in the Company (if and to the extent issued by the Company).

"**Proceeds**" means cash and other assets (including without limitation share consideration) that are proceeds from the Liquidity Event or the Dissolution Event, as applicable, and legally available for distribution.

"**Promised Options**" means promised but ungranted Options that are the greater of those (i) promised pursuant to agreements or understandings made prior to the execution of, or in connection with, the term sheet or letter of intent for the Equity Financing or Liquidity Event, as applicable (or the initial closing of the Equity Financing or the consummation of the Liquidity Event, if there is no term sheet or letter of intent), (ii) in the case of an Equity Financing, treated as outstanding Options in the calculation of the Equity Financing Shares' price per share, or (iii) in the case of a Liquidity Event, treated as outstanding Options in the calculation of the distribution of the Proceeds.

"**Safe**" means an instrument containing a future right to Capital Shares, similar in form and content to this instrument, purchased by investors for the purpose of funding the Company's business operations. References to "this Safe" mean this specific instrument.

"**Safe Shares**" means the class, series and/or type of shares issued to the Investors in an Equity Financing, having the identical rights, privileges, preferences and restrictions as the Equity Financing Shares, other than (if applicable and to the extent the Equity Financing Shares are of a certain series of Preferred Shares) with respect to: (i) the per share liquidation preference and the initial conversion price for purposes of price-based anti-dilution protection, which will equal the Safe Price; (ii) the basis for any dividend rights, which will be based on the Safe Price; and (iii) to the extent applicable, the basis for the redemption price, which will be based on the Safe Price.

"**Safe Price**" means a price per share calculated as follows: (x) a Company valuation of $65,000,000 on a fully diluted basis immediately prior to the closing of the Equity Financing or Liquidity Event, as the case may be; *divided by* (y) (i) in case of Equity Financing – the Company Capitalization, or (ii) in case of Liquidity Event – the Liquidity Capitalization.

"**Unissued Option Pool**" mean all shares that are reserved and available for future grant and not subject to any outstanding Options or Promised Options under any equity incentive or similar Company plan.

3. *Company Representations*

(a) The Company is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and has the power and authority to own, lease and operate its properties and carry on its business as now conducted.

(b) The execution, delivery and performance by the Company of this Safe is within the power of the Company and has been duly authorized by all necessary actions on the part of the Company (subject to Section 3(d)). This Safe constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity. To its knowledge, the Company is not in violation of (i) its current Articles of Association; (ii) any material statute, rule or regulation

4

applicable to the Company; or (iii) any material debt or contract to which the Company is a party or by which it is bound, where, in each case, such violation or default, individually, or together with all such violations or defaults, could reasonably be expected to have a material adverse effect on the Company.

(c) The performance and consummation of the transactions contemplated by this Safe do not and will not: (i) violate any material judgment, statute, rule or regulation applicable to the Company; (ii) result in the acceleration of any material debt or contract to which the Company is a party or by which it is bound; or (iii) result in the creation or imposition of any security interest, encumbrance or lien on any property, asset or revenue of the Company or the suspension, forfeiture, or nonrenewal of any material permit, license or authorization applicable to the Company, its business or operations.

(d) No consents or approvals are required in connection with the performance of this Safe, other than: (i) the Company's corporate approvals; (ii) any qualifications or filings under Applicable Securities Laws; and (iii) necessary corporate approvals for the authorization of Capital Shares issuable pursuant to Section 1.

(e) To its knowledge, the Company owns or possesses (or can obtain on commercially reasonable terms) sufficient legal rights to all patents, trademarks, service marks, trade names, copyrights, trade secrets, licenses, information, processes and other intellectual property rights necessary for its business as now conducted and as currently proposed to be conducted, without any conflict with, or infringement of the rights of, others.

(f) [The Company qualifies as a "private issuer", as such term is defined in Ontario pursuant to Section 73.4 of the *Securities Act* (Ontario) and elsewhere in Canada under National Instrument 45-106 – *Prospectus Exemptions*, and is not a reporting issuer, as such term is defined in the *Securities Act* (Ontario).[1]]

4. **Investor Representations**

(a) The Investor has full legal capacity, power and authority to execute and deliver this Safe and to perform its obligations hereunder. This Safe constitutes valid and binding obligation of the Investor, enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(b) The Investor is an accredited investor as such term is defined in: (x) if the investor is resident in the United States, Rule 501 of Regulation D under the Securities Act, and/or (y) under applicable Canadian securities laws, shall provide evidence of the same if requested by the Company, and acknowledges and agrees that if not an accredited investor at the time of an Equity Financing, the Company may void this Safe and return the Purchase Amount. The Investor has been advised that this Safe and the underlying securities have not been registered under the Securities Act, or any state, federal or provincial securities laws and, therefore, cannot be resold unless they are covered by a prospectus filed under applicable Canadian securities laws, registered under the Securities Act and applicable state securities laws or unless an exemption from such registration requirements is available. The Investor is purchasing this Safe and the securities to be acquired by the Investor hereunder for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and the Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment without impairing the Investor's financial condition and is able to bear the economic risk of such investment for an indefinite period of time.

(c) The Investor understands that the Company may be required to provide any one or more of the Canadian securities regulators or other regulatory agencies with the name, residential address, telephone number and e-mail

---

[1] NTD: to be reviewed and (if needed) adjusted by company's CA counsel.

5

address of such Investor as well as information regarding the number, aggregate purchase price and type of securities purchased under this Safe and the Investor hereby consents to and authorizes the foregoing use and disclosure of such information.

     **5.** *"MFN" Amendment Provision*. If the Company issues, following the date hereof and prior to termination of this Safe in accordance with the terms of Section 1(e) above, any subsequent Converting Securities with terms more favorable than those of this Safe (including, without limitation, a valuation cap and/or discount), the Company will promptly provide the Investor with written notice thereof, together with a copy of such subsequent Converting Securities (the "**MFN Notice**") and, upon written request of the Investor, any additional information related to such subsequent Converting Securities as may be reasonably requested by the Investor. In the event the Investor determines that the terms of the subsequent Converting Securities are preferable to the terms of this instrument, the Investor will notify the Company in writing within 10 days of the receipt of the MFN Notice. Promptly after receipt of such written notice from the Investor, the Company agrees to amend and restate this instrument to be identical to the instrument(s) evidencing the subsequent Converting Securities.

     **6.** *Board Participation Rights*. Until the closing of a Liquidity Event, the Investor shall have the right to appoint, in its sole discretion: (i) one (1) member to the Board of Directors of the Company, <u>or</u> (ii) one (1) non-voting observer who shall be entitled to participate in all meetings of the Board of Directors and to receive all material and information provided to the members of the Board, subject to the execution by such observer of a standard non-disclosure agreement.

     **7.** *Miscellaneous*

     (a) Any provision of this Safe may be amended, waived or modified by written consent of the Company and the Investor.

     (b) Any notice required or permitted by this Safe will be deemed sufficient when delivered personally or by internationally recognized overnight courier or sent by email to the relevant address listed on the signature page, or 48 hours after being deposited in the Canadian or U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address listed on the signature page, as subsequently modified by written notice.

     (c) The Investor is not entitled, as a holder of this Safe, to vote or be deemed a holder of Capital Shares for any purpose other than tax purposes, nor will anything in this Safe be construed to confer on the Investor, as such, any rights of a Company shareholder or rights to vote for the election of directors or on any matter submitted to Company shareholders, or to give or withhold consent to any corporate action or to receive notice of meetings, until shares have been issued on the terms described in Section 1. However, if the Company pays a dividend on outstanding Common Shares (that is not payable in Common Shares) while this Safe is outstanding, the Company will pay the Dividend Amount to the Investor at the same time.

     (d) Neither this Safe nor the rights in this Safe are transferable or assignable, by operation of law or otherwise, by either party without the prior written consent of the other; *provided, however*, that this Safe and/or its rights may be assigned without the Company's consent by the Investor (i) to the Investor's estate, heirs, executors, administrators, guardians and/or successors in the event of the Investor's death or disability, or (ii) to any other entity who directly or indirectly, controls, is controlled by or is under common control with the Investor, including, without limitation, any general partner, managing member, officer or director of the Investor, or any venture capital fund now or hereafter existing which is controlled by one or more general partners or managing members of, or shares the same management company with, the Investor; and *provided, further*, that the Company may assign this Safe in whole, without the consent of the Investor, in connection with a reincorporation to change the Company's domicile.

(e)  In the event any one or more of the provisions of this Safe is for any reason held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Safe operate or would prospectively operate to invalidate this Safe, then and in any such event, such provision(s) only will be deemed null and void and will not affect any other provision of this Safe and the remaining provisions of this Safe will remain operative and in full force and effect and will not be affected, prejudiced, or disturbed thereby.

(f)  The parties agree that this Safe (and all the rights and obligations hereunder) shall be governed by the laws of the Province of British Columbia and the federal laws of Canada applicable therein. Each party hereby submits to the exclusive jurisdiction of the Courts of Vancouver, British Columbia.

(g)  Unless otherwise stated herein, all references to "$" or "Dollars" shall refer to lawful currency of the United States of America.

(h)  The parties acknowledge and agree that for United States federal and state income tax purposes this Safe is, and at all times has been, intended to be characterized as "stock," and more particularly as "common stock" for purposes of Sections 304, 305, 306, 354, 368, 1036 and 1202 of the Internal Revenue Code of 1986, as amended. Accordingly, the parties agree to treat this Safe consistent with the foregoing intent for all United States federal and state income tax purposes (including, without limitation, on their respective tax returns or other informational statements).

*(Signature page follows)*

IN WITNESS WHEREOF, the undersigned have caused this Safe to be duly executed and delivered.

**PLATFORM LIFE SCIENCES INC.**

By: *Edward Mills*
    Edward Joseph Mills, Director

Address: 506-1505 W 2nd Ave.,
Vancouver, BC V6H 3Y4

Email: emills@platformlifesciences.com

**INVESTOR:** Latona Bioscience Group

By: *Ross Rheingans-Yoo*

Name: Ross Rheingans-Yoo

Title: Director

Address: P.O. Box N-7525, Nassau, The Bahamas

Email: ross@ftxfoundation.com