# EXHIBIT 8

# **SERVICES AGREEMENT**

This Services Agreement (the "**Agreement**") is entered into as of June 7, 2022 (the "**Effective Date**"), by and between **Latona Biosciences Group**, whose address is located at P.O. Box N-7525, Nassau, The Bahamas ("**Latona**") and **Platform Life Sciences Inc.**, a company incorporated under the laws of British Columbia, whose offices are located at 506-1505 W 2nd Ave., Vancouver, BC V6H 3Y4, Canada (the "**Service Provider**"). Each of Latona and Service Provider shall be referred to herein as a "**Party**" and together, the "**Parties**".

RECITALS:

WHEREAS    the Service Provider is engaged in the business of harnessing advanced methodologies in clinical trial design and implementation in order to improve efficiencies in healthcare; and

WHEREAS    Latona is part of the FTX group and its philanthropic arm – The FTX Foundation; and

WHEREAS Latona is interested to designate third parties and pay for the Services (as defined below) which Service Provider will render to the third parties designated by Latona ("**Latona Third Party Designee**"); and

WHEREAS the Parties wish to set out in writing the terms and conditions upon which the Services shall be rendered by the Service Provider to Latona Third Party Designees;

THEREFORE, the Parties hereby agree as follows:

1. *Services; Scope of Work*

    1.1. Service Provider shall provide each Latona Third Party Designee with the services to be more fully described in the Statements of Work to be issued hereunder, in the form attached hereto as Exhibit A (the "**Services**"). Each Statement of Work shall be completed by the Parties upon commencement of each project with a Third Party Designee.

    1.1. The Services to be provided hereunder shall be performed solely and exclusively by the Service Provider and its employees and sub-contractors, unless otherwise agreed in writing between the Parties.

    1.2. Service Provider shall coordinate the Services to each Latona Third Party Designee ahead of each designation and shall update Latona periodically with regard to the progress of the Services so rendered. Notwithstanding the foregoing, the Parties hereby agree that as an independent contractor, Service Provider shall have independent discretion to direct the means and manner of the performance of the Services and achieving the desired results thereof.

2. *Representations and Warranties*

    2.1. Each of the Parties hereby represents and warrants that (i) it has the full power, authority and legal right to enter into and perform its obligations under this Agreement; (ii) this Agreement is a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof; and (iii) this Agreement will not result in a violation of or default under any agreement or obligation to which such Party is a party.

    2.2. Service Provider represents and warrants that it has the requisite knowledge, skills and experience in order to provide the Services. Service Provider undertakes to perform the Services under this Agreement with the highest degree of professionalism.

    2.3. Service Provider shall not make any representations or give any guarantees to Latona Third Party Designees on behalf of Latona.

3. *Service Fees*

3.1. Latona will pay Service Provider an advance payment in an amount of Fifteen Million US Dollars (US $15,000,000), payable in a single installment within seven (7) days from the Effective Date. The advance payment is paid against the fees Latona should have paid for the Services rendered to Latona Third Party Designees. Latona hereby acknowledges that Service Provider shall budget each such clinical trial on a Cost+20% basis, until the advance payment is exhausted.

3.2. All payments under this Agreement shall be made without deduction or withholding of any kind, against the issuance by Service Provider of proper invoice(s) in accordance with applicable law. All such payments are inclusive of value added tax, if required under applicable law.

3.3. All payments hereunder shall be made in US Dollars.

3.4. Service Provider acknowledges and agrees that it is the sole responsibility of Service Provider to report as income the fees received from Latona hereunder and to make the requisite tax filings and payments to the applicable tax authorities.

3.5. Service Provider hereby acknowledges and agrees that the aforesaid fees are the sole and exclusive consideration to which Service Provider is entitled in exchange for the Services hereunder.

4. **Term and Termination**.

    4.1. This Agreement shall commence on the Effective Date and shall continue to be in full force and effect until conclusion of the Services or unless terminated earlier pursuant to the provisions of this Section 4.

    4.2. Either Party may terminate this Agreement as follows:

    (i) at any time in the event of a material breach of this Agreement by the other Party, which breach remains uncured (if curable) upon the lapse of a fourteen (14) days' period from the non-breaching Party' written notice.

    (ii) immediately following written notice to the other Party, if the other Party (a) ceases to do business in the ordinary course, (b) becomes or is declared insolvent or bankrupt, (c) is the subject of any proceeding related to its liquidation or insolvency (whether voluntary or involuntary), or (d) makes a general assignment for the benefit of creditors.

    4.3. Upon termination of this Agreement for any reason whatsoever, each Party shall return to the other Party any and all Confidential Information (as defined below) disclosed or made available by the disclosing Party to the receiving Party. For the avoidance of any doubt, termination of this Agreement for any reason shall not result in any refund of the fees paid or payable to Service Provider prior to the effective date of termination.

    4.4. Sections 4.4, 4.5, 5, 6, 7, 8.6 and 8.7 of this Agreement shall survive the expiration or early termination of this Agreement.

5. **Confidentiality**

    5.1. For the purposes of this Agreement "**Confidential Information**" shall mean any information, in whatever form, disclosed to and/or otherwise acquired by and/or developed by and/or made available by one Party (the "**Disclosing Party**") to the other Party (the "**Receiving Party**") in the course of this Agreement and/or in connection with the Services rendered hereunder, in any form or medium, which is or should be reasonably understood to be confidential or proprietary to the Receiving Party, including, but not limited to, the terms of this Agreement, information regarding research and development related to actual or anticipated products, inventions, whether patentable or non-patentable, discoveries, innovations, designs, drawings, sketches, diagrams, formulas, computer files, computer programs, hardware, software or other products, product definitions, product research, manuals, selection processes, data, methods of manufacture, planning processes, trade secrets, business secrets, business plans, copyrights, proprietary information, customer lists, names of clients, list of suppliers, marketing plans, strategies, forecasts, business forecasts, processes, finances, costing, sales, prices, terms of payment, formulae, know-how, improvements and

techniques and any other data related to the business or affairs of the Disclosing Party, its subsidiaries and affiliated companies, its licensors and business partners.

5.2. Confidential Information shall not include information that (i) has become part of public knowledge through no fault of the Receiving Party; (ii) was already in the Receiving Party's possession at the time of disclosure, as evidenced by the Receiving Party's written records dated prior to the disclosure; (iii) was independently developed by the Receiving Party, without use of or reference to the Confidential Information of the Disclosing Party, as evidenced by the Receiving Party's written records; or (iv) is rightfully received by the Receiving Party from a third party without a duty of confidentiality.

5.3. The Receiving Party hereby undertakes to hold the Confidential Information in strict confidence and not to disclose the Confidential Information to any third party, without the prior written consent of the Disclosing Party. The Receiving Party further undertakes to use the Confidential Information only as reasonably necessary to carry out the purposes of this Agreement and not to modify, translate, decompile, reverse engineer or disassemble such Confidential Information.

5.4. The Receiving Party agrees and undertakes to promptly return to the Disclosing Party all documents and other written embodiments containing Confidential Information, upon the Disclosing Party's first written request (and in any event, upon expiration or termination of this Agreement).

5.5. The Receiving Party undertakes to treat all Confidential Information of the Disclosing Party with at least the same degree of care as the Receiving Party accords to its own confidential information, but in no event less than a reasonable degree of care.

5.6. All Confidential Information remains the sole property of the Disclosing Party, and no license or other rights in or to the Confidential Information is or shall be granted to the Receiving Party hereby, other than the limited right to use such Confidential Information in accordance with the terms hereof.

5.7. The Receiving Party is aware that a breach of any of the obligations under this Section 5 (as well as under Section 6 below) may cause the Disclosing Party serious and irreparable harm, for which no monetary compensation can be an appropriate remedy. Therefore, the Receiving Party agrees that if such a breach occurs, the Disclosing Party shall be entitled, without prejudice, to take all legal means necessary, including any injunctive relief, to restrain any continuation or further breach of the aforesaid provisions of this Agreement.

6. **_Intellectual Property_**

6.1. The Parties hereby acknowledge and agree that any and all information, memoranda, books, notes, records, charts, formula, specifications, presentations, lists, drafts, patent applications and other documents, data, as well as any know how, inventions, improvements, mask works, designs, discoveries or works, whether or not capable of being patented or copyrighted, and any and all derivatives related thereto, which Service Provider may conceive, make, develop, author, or work on, in whole or in part, independently or jointly with others, in connection with the Services under this Agreement (collectively, the "**Services' Results**"), are and shall remain owned, solely and exclusively, by Service Provider or in accordance with an agreement between Service Provider and each Latona Third Party Designee.

6.2. Latona hereby specifically acknowledges and agrees that while it may enjoy the benefits and results of the Services hereunder, on a non-exclusive and/or indirect basis, the Services' Results do not and will not qualify as "works made for hire" under applicable copyright laws, and that Service Provider shall continue to retain full ownership and other rights in or to such Services' Results. In view of the above, Latona further acknowledges and agrees that no part of the Services' Results is or shall be assigned to Latona in any way, and hereby completely, irrevocably and forever waives any claim, demand and/or cause of action in this respect.

7. **_Limitation of Liability_**

EXCEPT FOR LABIALITY ARISING OUT OF BREACH OF SECTIONS 5 AND/OR 6 ABOVE, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OF ANY KIND OR NATURE, INCLUDING WITHOUT LIMITATION LOST REVENUES OR LOST PROFITS, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT (INCLUDING, WITHOUT LIMITATION, THE BREACH OF THIS AGREEMENT OR ANY TERMINATION OF THIS AGREEMENT), TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), OR OTHERWISE, EVEN IF THE OTHER PARTY HAS BEEN WARNED IN ADVANCE OF THE POSSIBILITY OF ANY SUCH LOSS OR DAMAGE.

8. *Miscellaneous*

    8.1. Service Provider is an independent contractor of Latona. Nothing in this Agreement shall be interpreted or construed as creating or establishing any partnership, joint venture, employment relationship, franchise or agency or any other similar relationship between the Parties.

    8.2. This Agreement contains and sets forth the entire agreement and understanding between the Parties with respect to the subject matter contained herein, and such supersedes all prior discussions, agreements, representations and understandings in this regard.

    8.3. This Agreement may be changed, amended or otherwise modified only by means or a written instrument executed by both Parties.

    8.4. The terms of this Agreement may be waived only by a written document executed by the Party entitled to the benefits of such terms. Each such waiver or consent shall be effective only in the specific instance and for the purpose for which it was given, and shall not constitute a continuing waiver or consent.

    8.5. No failure or delay by a Party hereto in exercising any right, power or remedy under this Agreement, and no course of dealing between the Parties hereto, shall operate as a waiver of any such right, power or remedy of the Party. No single or partial exercise of any right, power or remedy under this Agreement by a Party hereto, nor any abandonment or discontinuance of steps to enforce any such right, power or remedy, shall preclude such Party from any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.

    8.6. Any notice required or permitted by this Agreement will be deemed sufficient when delivered personally or by internationally recognized overnight courier or sent by email to the relevant address listed above, or forty-eight (48) hours after being deposited in the Canadian or U.S. mail as certified or registered mail with postage prepaid, addressed to the Party to be notified at such Party's address listed above, as such address may be subsequently modified by written notice to the other Party.

    8.7. The Parties shall attempt to resolve any dispute, controversy or claim arising out of or relating to this Agreement (each, a "**Dispute**") by good faith negotiations and consultation between or among themselves. In the event that such Dispute is not resolved on an informal basis within ninety (90) calendar the parties will submit the Dispute to mediation by a neutral mediator having at least ten (10) years' experience. The Parties covenant that they will use commercially reasonable efforts in participating in the mediation. The Parties agree that the mediator's fees and expenses and the costs incidental to the mediation will be shared equally between the Parties. If the Parties cannot resolve the Dispute within ninety (90) calendar days of the Mediation, the Parties may (as their sole recourse) initiate confidential arbitration to resolve the Dispute ("**Arbitration**"). Such Arbitration shall be: (i) held in New York, New York; (ii) conducted by a single arbitrator applying New York law; (iii) administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

    8.8. The captions and headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement. This Agreement

shall be construed fairly according to its terms, without regard to the drafter of any provision hereof.

8.9. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document. Delivery of an executed signature page to this Agreement by facsimile shall be effective to the same extent as if such Party had delivered a manually executed counterpart.

[*Signature Page to Follow*]

**IN WITNESS WHEREOF**, the duly authorized representatives of the Parties have executed this Agreement as of the last date set forth below.

| | |
|---|---|
| *DocuSigned by:* [signature] <br> 1BAEC7B97846458... <br> **Platform Life Sceinces Inc.** <br><br> By: <u>Edward Joseph Mills</u> <br> Title: <u>Director</u> <br> Date: _____ | *DocuSigned by:* [signature] <br> B9DE650515F74FD... <br> **Latona Biosciences Group** <br><br> By: <u>Ross Rheingans-Yoo</u> <br> Title: <u>Director</u> <br> Date: _____ |

*[Signature Page to Services Agreement – June 2022]*

6

# Exhibit A

## Statement of Work for a Third Party Designee

1. The Services:

    **1.1. Name of Latona Third Party Designee – [ENTER NAME]**

    1.2. **Description of Services** – Design, management and performance of the following clinical trial – [**ADD DESCRIPTION OF CLINICAL TRIAL**].

    1.3. **Commencement Date** – _____, 2022.

2. The Fees

    The fees attributable to this Latona Third Party Designee are [**ENTER SUM**].

\* \* \* \* \*