## Exhibit 1

**Settlement Stipulation with Latona Biosciences Group and Ross Rheingans-Yoo**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| ALAMEDA RESEARCH LTD. and FTX TRADING LTD., | |
| Plaintiffs, | |
| - against - | Adv. Pro. No. 23-50444 (JTD) |
| PLATFORM LIFE SCIENCES INC., LUMEN BIOSCIENCE, INC., GREENLIGHT BIOSCIENCES HOLDINGS, PBC, RIBOSCIENCE LLC, GENETIC NETWORKS LLC, 4J THERAPEUTICS INC., LATONA BIOSCIENCES GROUP, FTX FOUNDATION, SAMUEL BANKMAN-FRIED, ROSS RHEINGANS-YOO, and NICHOLAS BECKSTEAD, | |
| Defendants. | |

**STIPULATION OF SETTLEMENT**

This stipulation of settlement ("Stipulation") is being entered into by and among Alameda

Research Ltd. ("Alameda"), FTX Trading Ltd. ("FTX" and, together with Alameda, "Plaintiffs"),

Alameda Research (Bahamas) Ltd. ("Alameda Bahamas"), Latona Biosciences Group ("Latona")

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

and Ross Rheingans-Yoo ("Rheingans-Yoo").    Plaintiffs, Alameda Bahamas, Latona, and Rheingans-Yoo are each a "Party" and are referred to collectively as the "Parties."

WHEREAS, on November 11, 2022, Plaintiffs and Alameda Bahamas each filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered in the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.);

WHEREAS, on June 29, 2023, Rheingans-Yoo filed a non-customer claim against Alameda Bahamas, claim no. 5166, and a duplicative claim, claim no. 89710, seeking at least $993,611.08 in unpaid employment compensation, comprised of four components:  (i) a claim for $275,000 in unpaid cash bonus ("Cash Bonus Claim"), (ii) a claim for $650,000 in unpaid bonus in the form of a donation to be made to a charity of Rheingans-Yoo's choosing ("FDU Claim"), (iii) a claim for $5,763.33 in unpaid prepetition salary ("Prepetition Salary Claim"), and (iv) a claim for $62,847.75 in unpaid postpetition salary[2] ("Postpetition Salary Claim" and, together, with the Cash Bonus Claim, FDU Claim, and Prepetition Salary Claim, the "Compensation Claims");

WHEREAS, on July 19, 2023, Plaintiffs commenced Adversary Proceeding No. 23-50444 (the "Adversary Proceeding") in the Bankruptcy Court against Latona, Rheingans-Yoo, and others by filing a complaint [Adv. D.I. 1], which Plaintiffs subsequently amended on December 22, 2023 [Adv. D.I. 73].  Plaintiffs assert in the Adversary Proceeding, among other things, claims against Latona related to fraudulent transfers by FTX and Alameda to Lumen Bioscience, Inc., Greenlight

---

[2]        In his Non-Customer Claim, Rheingans-Yoo "expressly reserve[d] his claim for additional unpaid compensation accruing from and after June 23, 2023."

Biosciences Holdings, PBC, Riboscience LLC, Genetic Networks LLC, and 4J Therapeutics Inc. (collectively, the "Small Lifesciences Defendants") and Platform Lifesciences Inc. ("PLS" ), and a claim against Rheingans-Yoo for aiding and abetting Samuel Bankman-Fried's breach of fiduciary duties to FTX and Alameda (the "Adversary Claims");

**WHEREAS**, on October 31, 2023, Rheingans-Yoo and Latona timely filed an answer to Plaintiffs' complaint in the Adversary Proceeding [Adv. D.I. 1],[3] in which Rheingans-Yoo and Latona denied the Adversary Claims;

**WHEREAS**, on November 1, 2023, Plaintiffs entered into a stipulation with the Small Lifesciences Defendants ("the "Stay Stip.") [Adv. D.I. 64], pursuant to which the Small Lifesciences Defendants agreed that, in connection with any resolution between Plaintiffs and Rheingans-Yoo and Latona, the Small Lifesciences Defendants would "work to facilitate[ ] the transfer to one or both of the Plaintiffs . . . all rights and interests that Latona currently has in the Small Lifesciences Defendants" (Stay Stip. ¶ 2);

**WHEREAS**, on January 18, 2024, Plaintiffs entered into a stipulation of settlement with PLS to resolve the Adversary Proceeding as to PLS, which settlement was approved on February 13, 2024 [Adv. D.I. 89];

**WHEREAS**, the Parties have been engaged in good-faith, arm's-length negotiations about resolving the Adversary Claims and the Compensation Claims;

**WHEREAS**, in order to avoid the expense, burden and inconvenience of litigation, the Parties desire and intend to effect a final settlement and resolution of the Adversary Claims and

---

[3]     Pursuant to the so-ordered Case Management Plan and Scheduling Order dated January 17, 2024 [Adv. D.I. 81], Rheingans-Yoo and Latona were not required to answer Plaintiff's amended complaint.

the Compensation Claims except the FDU Claim, which will be severed for determination by the Bankruptcy Court at a later date; and

WHEREAS, Plaintiffs and Alameda Bahamas, in the exercise of their business judgment, have concluded that final settlement and resolution of the Adversary Claims and the Compensation Claims (except the FDU Claim) in accordance with the terms of this Stipulation is in the best interest of Plaintiffs and Alameda Bahamas, their creditors and other stakeholders.

NOW, THEREFORE, IT IS HEREBY STIPULATED by and among the undersigned counsel for the Parties as follows:

1.     **Settlement of Adversary Claims**.  Rheingans-Yoo, in his capacity as a director of Latona, shall cause Latona (a) to execute and deliver to Plaintiff Alameda an Assumption and Assignment Agreement, substantially in the form attached hereto as Exhibit 1 (the "Assumption and Assignment Agreement"), Consent Agreements by and among Latona, Alameda, and each of 4J Therapeutics Inc. ("4J Therapeutics"), Lumen Bioscience, Inc. ("Lumen") and Rioscience LLC ("Rioscience"), substantially in the forms attached hereto as Exhibits 2–4 (the "Consent Agreements"), and any other such documents, instruments, conveyances and assurances necessary to assign Latona's interests in 4J Therapeutics, Lumen and Rioscience to Alameda, and (b) to take such further actions as Alameda may reasonably request to transfer and assign Latona's rights and interests in each of 4J Therapeutics, Lumen and Rioscience to Alameda.  Rheingans-Yoo shall cause Latona to execute and deliver the Assumption and Assignment Agreement within five (5) business days of the date on which the last of the three Consent Agreements is fully executed. Rheingans-Yoo and Latona represent and warrant that Latona and the Small Lifesciences Defendants have entered into no agreements providing Latona with rights and interests in the Small Lifesciences Defendants other than:  (i) the Charitable Research Funding Agreement, dated as of

August 5, 2022, by and between Lumen and Latona; (ii) the 2.88% Convertible Promissory Note of Genetic Networks LLC ("Genetic Networks"), due upon demand beginning in 2024 (the "2024 Note"); (iii) the 5% Convertible Promissory Note of 4J Therapeutics due 2028; (iv) the Note Purchase Agreement, dated as of October 7, 2022, by and among 4J Therapeutics, Latona and the other parties thereto; (v) the Amended and Restated Limited Liability Company Agreement of Rioscience, dated as of June 11, 2021; (vi) the Series A Unit Purchase Agreement with Rioscience, dated as of June 11, 2021, by and among Rioscience, Latona and the other parties thereto; (vii) the Investors' Rights Agreement, dated as of June 11, 2021, by and among Rioscience, Latona and the other parties thereto; (viii) the Voting Agreement, dated as of June 11, 2021, by and among Rioscience, Latona and the other parties thereto; (ix) the Right of First Refusal and Co-Sale Agreement, dated as of June 11, 2021, by and among Rioscience, Latona and the other parties thereto; and (x) the Subscription Agreement, dated August 11, 2022, by and between Latona and GreenLight Biosciences Holdings, PBC ("GreenLight"). Rheingans-Yoo and Latona make no representations or warranties as to the status or value of Latona's rights and interests in the Small Lifesciences Defendants. Rheingans-Yoo and Latona shall not incur any legal, administrative or other expenses necessary to affect such transfers or assignments, which costs shall be borne by Plaintiffs.

2.     **Waiver of Rights**. Latona hereby waives any rights or preferences it may have (i) to receive consideration for those shares of common stock, par value $0.0001 per share, of GreenLight pursuant to the terms of that certain Agreement and Plan of Merger, dated as of May 29, 2023, by and among SW ParentCo, Inc., SW MergerCo, Inc. and GreenLight, and the transactions contemplated thereby, (ii) under that certain Subscription Agreement, dated as of

August 11, 2022, by and between Latona and GreenLight, and (iii) as a former stockholder of GreenLight.[4]

3.      **Termination of 2024 Note**.  Within five (5) days of Alameda providing written notice to Latona that Alameda has received a payment of $450,000 from Genetic Networks, Latona shall execute a Convertible Promissory Note Satisfaction and Release by and between Latona and Genetic Networks, substantially in the form attached hereto as Exhibit 5.

4.      **Partial Settlement of Compensation Claims**.  Excepting the FDU Claim, which is addressed in paragraph 5, the Debtors allow and shall pay, in accordance with their chapter 11 plan, Rheingans-Yoo's Compensation Claim as a General Unsecured Claim in the amount of $180,000, $15,150 of which will be treated as a priority claim under 11 U.S.C. § 507(a)(4) (the "Allowed Claim").  The Debtors, or their claims and noticing agent, shall update the Claims Register to reflect the allowance and classification of the Allowed Claim.

5.      **Further Submission on Objection to FDU Claim**. The Debtors' Objection to the Compensation Claims (the "Objection") [D.I. 3409] and Rheingans-Yoo's Response to the Debtors' Objection (the "Response") [D.I. 3737] will not be withdrawn.  The Debtors will not object to Rheingans-Yoo filing a Supplemental Response to the Objection ten (10) days before the July 2024 omnibus hearing, or a later hearing as the parties so mutually agree, solely to address the FDU Claim (the "Supplemental FDU Response").  The Debtors will limit their reply to the Response and Supplemental FDU Response, if any, to addressing the FDU Claim, and will not address the balance of Rheingans-Yoo's Compensation Claims, except insofar as to inform the

---

[4]      Pursuant to an August 11, 2022 Subscription Agreement, by and between Latona and GreenLight, Latona acquired 1,403,061 shares in GreenLight.  On July 24, 2023, GreenLight was acquired in an all-cash, go-private transaction.  Pursuant to the terms of the merger agreement, Latona's shares in GreenLight converted into a right to receive $420,918.30.

Bankruptcy Court that the Debtors and Rheingans-Yoo have agreed to settle certain of Rheingans-Yoo's Compensation Claims and to sever the FDU Claim for determination by the Bankruptcy Court at a later date.

6.      **Discovery**.  Latona and Rheingans-Yoo shall provide certain discovery on the terms enumerated in (a) – (c) below.

(a)      Within sixty (60) days of the Effective Date, Latona and Rheingans-Yoo shall provide Plaintiffs any documents in their possession, custody, or control regarding Latona or its investments in or grants made to the Small Lifesciences Defendants and PLS;

(b)      To the extent that Plaintiffs deem it reasonably necessary, Rheingans-Yoo shall participate in an interview by Plaintiffs conducted by Zoom on a date mutually agreeable to the Parties after Defendant Samuel Bankman-Fried has filed his answer in the Adversary Proceeding (the "Interview").  Rheingans-Yoo shall be entitled to have counsel, at his own expense, during the Interview, which shall consist of a single session not to exceed seven hours, and which shall not be transcribed by a court reporter or otherwise recorded by video or audio; and

(c)      To the extent that Plaintiffs deem it reasonably necessary, Rheingans-Yoo, through his undersigned counsel, shall accept service of a subpoena under Federal Rule of Civil Procedure 45 (or equivalent) for his deposition and/or for the 30(b)(6) deposition of Latona in the Adversary Proceeding, provided that any such subpoena shall not be served prior to Defendant Samuel Bankman-Fried filing his answer in the Adversary Proceeding.  If Plaintiffs depose Rheingans-Yoo and/or Latona, the deposition shall be conducted by Zoom, and the deponents are entitled to have counsel, at their own expense, during any such deposition.

Nothing contained in this paragraph 6 shall be deemed or construed to be a waiver of Rheingans-Yoo or Latona's rights to assert privilege or other objections in connection with this discovery.[5]

7. **Bankruptcy Court Approval**. This Stipulation is subject in all respects to the approval of the Bankruptcy Court. Plaintiffs and Alameda Bahamas shall file a motion, in a form reasonably acceptable to Latona and Rheingans-Yoo, seeking approval of the Stipulation (the "Approval Motion") within fourteen (14) days after the date on which the last of the settlement stipulations between Alameda and Latona and Alameda and each of the Small Lifesciences Defendants is fully executed. In the event that the Bankruptcy Court declines to approve this Stipulation, or the order approving the Stipulation (the "Approval Order") does not become final and non-appealable, this Stipulation shall become null and void and of no further force and effect.

8. **Effective Date**. The terms of this Stipulation shall become effective upon the Approval Order becoming final and non-appealable (the "Effective Date").

9. **Dismissal with Prejudice**. Provided that Rheingans-Yoo and Latona have reasonably complied with their obligations under paragraphs 1 and 16 of this Stipulation, then within five (5) business days after the Assumption and Assignment Agreement is fully executed, Plaintiffs shall file with the Bankruptcy Court a notice of dismissal with prejudice of the Adversary Claims against Rheingans-Yoo and Latona (the "Notice of Dismissal").

10. **Mutual Releases**. Upon the filing of the Notice of Dismissal pursuant to paragraph 9, each Party unconditionally and irrevocably releases, acquits and forever discharges the other Parties and their officers, members, directors, employees, agents, attorneys and

---

[5]    Rheingans-Yoo has informed the Debtors that he reserves any rights he has under the Bankruptcy Code or Bankruptcy Rules to seek additional discovery on his FDU Claim. The Debtors have informed Rheingans-Yoo that they will oppose any request for additional discovery on the FDU Claim, which the Parties agree is primarily legal in nature.

stockholders from any and all claims, counterclaims, demands, liabilities, suits, debts, costs, expenses, and causes of action, at law or in equity, including, but not limited to, claims for interest, compensatory, exemplary, statutory, punitive or restitutionary damages, and expert or attorneys' fees and costs, related to the Adversary Claims; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Stipulation.

11.     **Partial Release of Compensation Claims**.  The Debtors allow Rheingans-Yoo's Compensation Claims, except the FDU Claim, as General Unsecured Claims in the amount of $180,000, $15,150 of which will be treated and paid as a priority claim under 11 U.S.C. § 507(a)(4).  Upon the filing of the Notice of Dismissal set forth in paragraph 9, Rheingans-Yoo (i) releases and disclaims any and all interests in his Compensation Claims (except the FDU Claim) to the extent they exceed the amount of $180,000 that the Debtors allow as a General Unsecured Claim, $15,150 of which will be treated and paid as a priority claim under 11 U.S.C. § 507(a)(4); and (ii) releases and forever discharges the Debtors from any liability in excess of $180,000, $15,150 of which will be treated and paid as a priority claim under 11 U.S.C. § 507(a)(4), in connection with his Compensation Claims (except the FDU Claim).  For the avoidance of doubt, Rheingans-Yoo does not release his FDU Claim, which shall be determined by the Bankruptcy Court at a later date.

12.     **Express Preservation of Claims by the Plaintiffs**.  For the avoidance of doubt, notwithstanding the foregoing, Plaintiffs' release of Claims in paragraph 10 above shall not include any claims asserted by Plaintiffs against any Defendants in the Adversary Proceeding other than Rheingans-Yoo and Latona.

13.     **Reservation of Rights**.  Except as otherwise set forth in this Stipulation, each Party reserves any and all rights, claims, and defenses against any other Party, including with respect to the FDU Claim.

14.     **No Admission of Wrongdoing**.  This Stipulation does not constitute an admission by any of the Parties of any wrongful action or violation of any federal, state, or commonwealth statutory or common law rights, or any other possible or claimed violation of law or rights.  The Stipulation shall not be construed as an admission of liability.

15.     **Good Faith and Understanding**.  The Parties expressly represent and warrant that this Stipulation is entered into in good faith and acknowledge that execution of this Stipulation is not the product or result of any duress, economic or otherwise.  The Parties represent and warrant that they have read and understand the terms of this Stipulation.  The Parties further represent and warrant that each individual signing the Stipulation on behalf of such Party is fully authorized to sign on behalf of said Party.

16.     **Cooperation**.  Each Party shall cooperate with each other Party and take such actions as are reasonably necessary to obtain approval of this Stipulation by the Bankruptcy Court and entry of the Approval Order, and to effectuate its terms.

17.     **Authorization**.  Each Party, by and through their undersigned counsel, represents and warrants that the undersigned is fully authorized and empowered to execute and deliver this Stipulation on behalf of, and to bind, each of the Parties, as applicable, to the terms and conditions of this Stipulation.

18.     **Costs**.  Each Party shall bear its own costs and legal fees in connection with this Stipulation.

19.    **Counterparts**.  The Parties may execute this Stipulation in multiple counterparts, each of which constitutes an original as against the Party that signed it, and all of which together constitute one agreement.

20.    **Effectiveness**.  This Stipulation shall become effective upon the execution of the same by all Parties and delivery of counterparts of such signatures to the other Party.  The Parties irrevocably consent to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Stipulation and expressly waive any right to commence any such action in any other forum.

**AGREED BY**:

April 11, 2024

SULLIVAN & CROMWELL LLP

Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:  wheelers@sullcrom.com
            gluecksteinb@sullcrom.com

*Counsel for Plaintiffs and Alameda Bahamas*

**GOETZ FITZPATRICK LLP**

Gary M. Kushner
Scott D. Simon
One Penn Plaza, Suite 3100
New York, NY 10119
Telephone: (914) 500-8737
E-mail:  gkushner@goetzfitz.com
           ssimon@goetzfitz.com


*Counsel for Ross Rheingans-Yoo and Latona*

**Exhibit 1**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement") is made effective as of [●], 2024, by and between Latona Bioscience Group, a nonprofit corporation organized under the laws of The Bahamas ("Assignor"), and Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"). Assignor and Assignee are referred to collectively as the "Parties" and individually as a "Party".

**WHEREAS**, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, the Parties desire to effect a final settlement and resolution of the Adversary Claims; and

**WHEREAS**, pursuant to that Stipulation of Settlement, by and among Assignor, FTX Trading Ltd. and Assignee, which the Bankruptcy Court approved on [●], 2024 (the "Settlement"), Assignor has agreed to assign to Assignee, and Assignee has agreed to assume from Assignor, the Interests (as defined below) and all of Assignor's right, title and interest in and to the Operative Documents, and Assignor has agreed to assign to Assignee the Contractual Rights (as defined below).

**NOW, THEREFORE**, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.     All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2.     For purposes of this Agreement:

(a)     "Interests" means (i) the 5% Convertible Promissory Note of 4J Therapeutics, Inc., due 2028 (the "2028 Note") and (ii) 224,467 Series A-2 Preferred Units in Rioscience LLC (the "Preferred Units");

(b)     "Designated Contracts" means (i) the Note Purchase Agreement, dated as of October 7, 2022, by and among 4J Therapeutics Inc., Assignor and the other parties thereto, (ii) the Charitable Research Funding Agreement, by and between Lumen Bioscience, Inc. and Assignor and (iii) the Series A Preferred Units Purchase Agreement, dated as of June 11, 2021, by and among Rioscience LLC, Assignor and the other parties thereto;

(c)     "Operative Documents" means (i) the Amended and Restated Limited Liability Company Agreement of Rioscience LLC, dated as of June 11, 2021, (ii) the Investors' Rights Agreement, dated as of June 11, 2021, by and among Rioscience LLC, Assignor and the other parties thereto,

(iii) the Voting Agreement, by and among Riboscience LLC, Assignor and the other parties thereto and (iv) the Right of First Refusal and Co-Sale Agreement, by and among Riboscience LLC, Assignor and the other parties thereto; and

(d)     "Contractual Rights" means all of Assignor's rights and benefits, but not obligations, under the Designated Contracts.

3.      Assignor hereby represents and warrants to Assignee as of the date hereof that:

(a)     Assignor is an entity duly organized and validly existing in good standing under the laws of the Bahamas. Assignor has the requisite power and authority to enter into, execute and deliver this Agreement and to perform all of its obligations to be performed by it hereunder, and this Agreement constitutes a valid and binding obligation of Assignor, enforceable against it in accordance with its terms.

(b)     Assignor owns all right, title and interest in and to the Interests and the rights set forth for the benefit of Assignor under the Designated Contracts, free and clear of all liens (statutory or otherwise), charges, pledges, mortgages, leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first offers or first refusals, servitudes, restrictive covenants or conditions, encroachments, claims, interests, restrictions or any other encumbrances of any kind (collectively, "Liens") other than any transfer restrictions arising solely under applicable federal and state securities laws or as set forth in the Operative Documents or the 2028 Note.

(c)     The execution and delivery by Assignor of this Agreement and the performance or consummation of the transactions contemplated hereby by Assignor do not conflict with, result in a breach or violation of, or result in the creation of a Lien on any of the Interests owned by Assignor or the Contractual Rights under the terms or provisions of (i) its organizational documents, (ii) any contract that is material to the value of the Interests or the Contractual Rights or (iii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over it or its property, except, in each case, for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, materially and adversely affect the Interests or the Contractual Rights.

(d)     Except pursuant to this Agreement, Assignor has not (i) sold, assigned, transferred, delivered or otherwise disposed of all or any portion of the Interests held by Assignor or the Contractual Rights, (ii) converted, exchanged or redeemed all or any portion of the Interests or the Contractual Rights or (iii) agreed to do any of the foregoing.

(e)     No person or entity acting on behalf of Assignor or under the authority of

Assignor shall be entitled to any broker's, finder's, or similar fee or commission in connection with the transactions contemplated hereby.

4.    Assignee hereby represents and warrants to Assignor as of the date hereof that:

(a)    Assignee is an entity duly organized and validly existing in good standing under the laws of the British Virgin Islands. Assignee has the requisite power and authority to enter into, execute and deliver this Agreement and to perform all of its obligations to be performed by it hereunder, and this Agreement constitutes a valid and binding obligation of Assignee, enforceable against it in accordance with its terms.

(b)    The execution and delivery by Assignee of this Agreement and the performance or consummation of the transactions contemplated hereby by Assignee do not conflict with or result in a breach or violation of (i) its organizational documents, (ii) any contract that is material to the value of the Interests or the Contractual Rights or (iii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over it or its property, except, in each case, for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, materially hinder, delay or impair the performance of its obligations under this Agreement.

5.    Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, (a) Assignor hereby assigns, conveys, transfers and delivers unto Assignee all right, title, benefit and interest of Assignor in, to and under the Interests and applicable Operative Documents and all of Assignor's burdens, obligations and liabilities in connection with the Interests and the applicable Operative Documents and (b) Assignee hereby accepts the aforesaid assignment and assumes and agrees to perform all of the obligations, terms, covenants and conditions required to be performed by Assignor in connection with the Interests and the applicable Operative Documents, in each case, other than any burdens, obligations, liabilities, terms, covenants and conditions arising under Section 7.6 of the 2028 Note.

6.    Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, Assignor hereby assigns, conveys, transfers and delivers unto Assignee all Contractual Rights, and Assignee hereby accepts the aforesaid assignment.

7.    The Parties agree (a) the transactions contemplated by this Agreement shall not be subject to any deduction or withholding and (b) to use commercially reasonable efforts to obtain any certificate or other document from any governmental body as may be necessary to mitigate, reduce or eliminate any tax (including withholding or deduction in respect of taxes) that could be imposed with respect to the transactions contemplated by this Agreement.

8.    Each of Assignor and Assignee shall execute and deliver, at the reasonable request of any Party, such additional documents, instruments, conveyances and assurances and take such further actions as such Party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

9.      Neither Assignor nor Assignee may assign any of their respective rights or delegate any of their respective obligations under this Agreement, by operation of law or otherwise, without the prior written consent of the other Party.  Any purported assignment not permitted under this Section 9 shall be null and void.

10.      This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Agreement and signed, in the case of an amendment, supplement or change, by the Party against whom enforcement of such waiver is sought. Subject to Section 9, this Agreement shall extend to and shall bind and inure to the benefit not only of Assignor and Assignee, but also their respective heirs, legal representatives, successors and assigns.

11.      Nothing in this Agreement, express or implied, is intended to or shall be construed to modify, expand or limit in any way the terms of the Settlement.  In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

12.      This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

13.      The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any person, entity or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision, covenant or restriction to other persons, entities or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction, and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

14.      This Agreement may be executed in one or more counterparts (including by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Agreement.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the Parties have executed or caused this Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____

     Name:

     Title:

**ALAMEDA RESEARCH LTD.**

By: _____

     Name:

     Title:

**Exhibit 2**

# CONSENT AGREEMENT

This CONSENT AGREEMENT (this "Consent Agreement") is made effective as of [●], 2024, by and among Latona Bioscience Group, a nonprofit corporation organized under the laws of the Bahamas ("Assignor"), Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"), and 4J Therapeutics Inc., a Delaware corporation (the "Subject Company"). All of the signatories to this Consent Agreement are collectively referred to as the "Parties" and individually as a "Party."

WHEREAS, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Assignee and the Subject Company desire to effect a final settlement and resolution of the Adversary Claim;

WHEREAS, Assignor wishes to transfer and assign to Assignee all of Assignor's right, title, benefit and interests and certain obligations (as set forth in the Assumption and Assignment Agreement) under the 5% Convertible Promissory Note of the Subject Company, due 2028 (the "2028 Note"); and

WHEREAS, pursuant to that certain Stipulation of Settlement, by and among Assignee, FTX Trading Ltd. and the Subject Company, as approved by the Bankruptcy Court on [●], 2024 (the "Settlement"), the Subject Company has agreed to consent to and approve the Assignment.

NOW, THEREFORE, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      All capitalized terms used in this Consent Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2.      Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, the Subject Company hereby consents to and approves the Assignment. The Subject Company hereby waives (a) any restrictions on transfer applicable to the Assignment that the Subject Company may have the right to enforce and (b) any right to receive an opinion of counsel in connection with such Assignment.

3.      Assignee represents and warrants to the Subject Company as of the date hereof that it is a company limited by shares organized under the laws of the British Virgin Islands.

4.      Each of Assignor and the Subject Company represents and warrants to Assignee that it has made available to Assignor accurate and complete copies of the 2028 Note and the Note Purchase Agreement, dated as of October 7, 2022, by and among the Subject Company, Assignor and the other parties thereto (the "Note Purchase Agreement"), each as of the date hereof. Except for the 2028 Note and the Note Purchase Agreement, each of Assignor and the Subject Company represents and warrants to Assignee that it has not entered into any other

-1-

documents, agreements or side letters with any other entity or person with respect to any rights or obligations of Assignor related to the Subject Company.

5.     Each Party shall execute and deliver, at the reasonable request of any other Party, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Consent Agreement.

6.     No Party may assign any of their respective rights or delegate any of their respective obligations under this Consent Agreement, by operation of law or otherwise, without the prior written consent of the other Parties.  Any purported assignment not permitted under this Section 6 shall be null and void.

7.     This Consent Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Consent Agreement and signed, in the case of an amendment, supplement or change, by the Parties against whom enforcement of such waiver is sought. Subject to Section 6, this Consent Agreement shall extend to and shall bind and inure to the benefit not only of the Parties, but also their respective heirs, legal representatives, successors and assigns.

8.     The Parties acknowledge and agree that neither the Chapter 11 Cases nor the Adversary Proceeding constitutes, in respect of the Subject Company, an involuntary proceeding under the United States Bankruptcy Code or any other federal or state bankruptcy, reorganization, receivership, insolvency or other similar law affecting the rights of creditors generally.

9.     In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

10.    This Consent Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

11.    The provisions of this Consent Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision, covenant or restriction of this Consent Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any Person or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Consent Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such

provision, in any other jurisdiction and the remainder of the terms, provisions, covenants and restrictions of this Consent Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

12.   This Consent Agreement may be executed in one or more counterparts (including by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Consent Agreement.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Consent Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____

    Name:

    Title:

**ALAMEDA RESEARCH LTD.**

By: _____

    Name:

    Title:

**4J THERAPEUTICS INC.**

By: _____

    Name:

    Title:

*[Signature Page to Consent Agreement]*

**Exhibit 3**

## CONSENT AGREEMENT

This CONSENT AGREEMENT (this "Consent Agreement") is made effective as of [●], 2024, by and among Latona Bioscience Group, a nonprofit corporation organized under the laws of the Bahamas ("Assignor"), Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"), and Lumen Bioscience, Inc., a Delaware corporation (the "Subject Company"). All of the signatories to this Consent Agreement are collectively referred to as the "Parties" and individually as a "Party."

WHEREAS, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Assignee and the Subject Company desire to effect a final settlement and resolution of the Adversary Claim;

WHEREAS, Assignor wishes to transfer Assignor's rights and benefits, but not obligations, under the Charitable Research Funding Agreement, by and between the Subject Company and Assignor (the "Charitable Research Funding Agreement", and Assignor's rights and benefits, but not obligations, thereunder, the "Contractual Rights") to Assignee; and

WHEREAS, pursuant to that certain Stipulation of Settlement, by and between Assignee and the Subject Company, as approved by the Bankruptcy Court on [●], 2024 (the "Settlement"), the Subject Company has agreed to consent to and approve the transfer of the Contractual Rights to Assignee.

NOW, THEREFORE, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    All capitalized terms used in this Consent Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2.    Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, the Subject Company hereby consents to and approves the transfer of the Contractual Rights to Assignee.

3.    Each of Assignor and the Subject Company represents and warrants to Assignee that it has made available to Assignor accurate and complete copies of the Charitable Research Funding Agreement as of the date hereof. Except for the Charitable Research Funding Agreement, each of Assignor and the Subject Company represents and warrants to Assignee that it has not entered into any other documents, agreements or side letters with any other entity or person with respect to any rights or obligations of Assignor related to the Subject Company.

4.    Each Party shall execute and deliver, at the reasonable request of any other Party, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give

effect to the transactions contemplated by this Consent Agreement.

5.      No Party may assign any of their respective rights or delegate any of their respective obligations under this Consent Agreement, by operation of law or otherwise, without the prior written consent of the other Parties.  Any purported assignment not permitted under this <u>Section 5</u> shall be null and void.

6.      This Consent Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Consent Agreement and signed, in the case of an amendment, supplement or change, by the Parties against whom enforcement of such waiver is sought.  Subject to <u>Section 5</u>, this Consent Agreement shall extend to and shall bind and inure to the benefit not only of the Parties, but also their respective heirs, legal representatives, successors and assigns.

7.      In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

8.      This Consent Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

9.      The provisions of this Consent Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision, covenant or restriction of this Consent Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any Person or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Consent Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction and the remainder of the terms, provisions, covenants and restrictions of this Consent Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.     This Consent Agreement may be executed in one or more counterparts (including by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Consent Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the parties hereto have executed or caused this Consent Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____

      Name:

      Title:

**ALAMEDA RESEARCH LTD.**

By: _____

      Name:

      Title:

**LUMEN BIOSCIENCE, INC.**

By: _____

      Name:

      Title:

**Exhibit 4**

# CONSENT AGREEMENT

This CONSENT AGREEMENT (together with all schedules hereto, this "Consent Agreement") is made effective as of [●], 2024, by and among Latona Bioscience Group, a nonprofit corporation organized under the laws of the Bahamas ("Assignor"), Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"), and Riboscience LLC, a Delaware limited liability company (the "Subject Company"). All of the signatories to this Consent Agreement are collectively referred to as the "Parties" and individually as a "Party."

**WHEREAS**, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, Assignee and the Subject Company desire to effect a final settlement and resolution of the Adversary Claim;

**WHEREAS**, Assignor wishes to transfer and assign all of Assignor's right, title, benefit and interests in its 224,467 Series A-2 Preferred Units (the "Preferred Units") in the Subject Company to Assignee; and

**WHEREAS**, pursuant to that certain Stipulation of Settlement, by and among Assignee, FTX Trading Ltd. and the Subject Company, as approved by the Bankruptcy Court on [●], 2024 (the "Settlement"), the Subject Company has agreed to consent to and approve the Assignment.

**NOW, THEREFORE**, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     All capitalized terms used in this Consent Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2.     Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, the Subject Company hereby consents to and approves the Assignment. The Subject Company hereby waives (a) any restrictions on transfer applicable to the Assignment that the Subject Company may have the right to enforce, (b) any right to receive an opinion of counsel in connection with the Assignment and (c) any rights of first refusal, and any notice rights in connection therewith, it may have in respect of the Assignment.

3.     Each of Assignor and the Subject Company represents and warrants to Assignee that it has made available to Assignor accurate and complete copies of the agreements set forth on Schedule A hereto (the "Operative Documents") as of the date hereof. Except for the Operative Documents, each of Assignor and the Subject Company represents and warrants to

Assignee that it has not entered into any other documents, agreements or side letters with any other entity or person with respect to any rights or obligations of Assignor related to the Subject Company.

4.      Each Party shall execute and deliver, at the reasonable request of any other Party, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Consent Agreement.

5.      No Party may assign any of their respective rights or delegate any of their respective obligations under this Consent Agreement, by operation of law or otherwise, without the prior written consent of the other Parties.  Any purported assignment not permitted under this Section 5 shall be null and void.

6.      This Consent Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Consent Agreement and signed, in the case of an amendment, supplement or change, by the Parties against whom enforcement of such waiver is sought.  Subject to Section 5, this Consent Agreement shall extend to and shall bind and inure to the benefit not only of the Parties, but also their respective heirs, legal representatives, successors and assigns.

7.      In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

8.      This Consent Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

9.      The provisions of this Consent Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision, covenant or restriction of this Consent Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any Person or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Consent Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction and the remainder of the terms, provisions, covenants and restrictions of this Consent Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.     This Consent Agreement may be executed in one or more counterparts (including

by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Consent Agreement.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Consent Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____

      Name:

      Title:

**ALAMEDA RESEARCH LTD.**

By: _____

      Name:

      Title:

**RIBOSCIENCE LLC**

By: _____

      Name:

      Title:

[*Signature Page to Consent Agreement*]

## Schedule A

1. Series A Preferred Units Purchase Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.
2. Amended and Restated Limited Liability Company Agreement of the Subject Company, dated as of June 11, 2021.
3. Investors' Rights Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.
4. Voting Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.
5. Right of First Refusal and Co-Sale Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.

**Exhibit 5**

## CONVERTIBLE PROMISSORY NOTE

## SATISFACTION AND RELEASE

1.	In consideration for an aggregate payoff amount of Four Hundred and Fifty Thousand Dollars ($ 450,000) (the "Payoff Amount") by Genetic Networks, LLC., a Delaware limited liability company ("Genetic") under that certain Convertible Promissory Note (the "Note") dated as of August 22, 2022, executed and delivered by Genetic as the borrower, in the original principal amount of Three Million Dollars ($3,000,000.00) in favor of Latona Bioscience Group, a nonprofit corporation organized under the laws of The Bahamas ("Latona") as payee, Latona, for itself and its successors and assigns, hereby confirms that, effective as of the Effective Date, (i) the aggregate outstanding principal balance, accrued interest, any other fees due to Latona and all other indebtedness, liabilities, and obligations of any kind owing to Latona under or in connection with the Note (the "Obligations") shall be paid and satisfied in full; (ii) all the security interests, mortgages, liens, pledges, charges and other encumbrances in favor of Latona to secure the Obligations, if any, shall be released and permanently terminated; (iii) all guarantees and security interests supporting the Obligations, if any, shall be released and permanently terminated; (iv) Latona forever waives, relinquishes and releases any and all claims against Genetic or Genetic's successors and assigns, for any and all liabilities and obligations, if any, of any kind whatsoever related to the Obligations; (v) all of the other respective obligations of Genetic or any of Genetic's subsidiaries or affiliates under the Notes shall be released and permanently terminated; (vi) the Note shall immediately terminate and be of no further force and effect; (vii) any conversion rights or other rights to acquire equity securities of Genetic under the Note will terminate and be null and void and Latona will thereafter not hold or have any right to acquire equity securities in Genetic with respect to the Note; and (viii) all other obligations of Genetic under the Note or any related agreements shall be terminated.

2.	From and after the Effective Date, Latona further agrees to procure and/or execute and to deliver to Genetic or Genetic's successors and assigns, from time to time, all releases, termination statements, certificates, instruments and documents, each in form and substance satisfactory to Genetic or Genetic's successors and assigns, and take any other actions, as may be reasonably requested by Genetic or Genetic's successors and assigns, or which are required to evidence the consummation of the payoff contemplated hereby, in each case at the expense of the requesting party (including attorneys' fees and expenses), and, effective as of the Effective Date, hereby authorizes Genetic and any other party designated by Genetic, to prepare, file, record and register any and all termination statements, releases and other instruments and documents evidencing the consummation of the payoff contemplated hereby, including, without limitation, UCC termination statements.

3.	"Effective Date" shall mean the date on which Genetic satisfies its obligations pursuant to that certain Stipulation of Settlement, by and among Alameda Research Ltd. ("Alameda"), FTX Trading Ltd. and Genetic, as approved by the Bankruptcy Court on [●], 2024, as the same may be amended, supplemented or otherwise modified from time to time, including but not limited to wiring to Alameda four hundred and fifty thousand dollars ($450,000).

4.      Alameda is a third-party beneficiary of this agreement and is entitled to enforce the provisions hereof.

[*Signature Pages to Follow*]

**IN WITNESS WHEREOF**, the undersigned has hereunto set his hand and seal, this _____ day of _____, 2024.

**LATONA BIOSCIENCE GROUP**

By: _____
     Name:
     Title:

Acknowledged and agreed,

**GENETIC NETWORKS, LLC.**


By: _____
     Name:
     Title: